Joyce Carolyn SMITH, Appellant,

v.

UNITED STATES of America, Appellee.

No. 82–2356.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 17, 1983.

Decided Feb. 6, 1984.

---

Larry R. McCord, U.S. Atty., Fort Smith, Ark., J. Paul McGrath, Asst. Atty. Gen., Jeffrey Axelrad, Karen M. Shichman, U.S. Dept. of Justice, Washington, D.C., for United States.

Erwin L. Davis, Fayetteville, Ark., for appellant.

Before HEANEY and McMILLIAN, Circuit Judges, and COLLINSON,* Senior District Judge.

## PER CURIAM.

Joyce Carolyn Smith appeals from a final judgment entered in the District Court[1] for the Western District of Arkansas after a non-jury trial finding that Smith failed to establish by a preponderance of the evidence either that she had contracted Guillain-Barre Syndrome (GBS) or that the illness from which she suffered was proximately caused by the swine flu inoculation.

For reversal Smith argues that the district court (1) imposed a higher burden of proof than that required under Arkansas law, (2) erred when it considered the National Institute of Neurological and Communicative Disorders and Stroke (NINCDS) diagnostic criteria to determine whether Smith had GBS, and (3) clearly erred in finding that Smith failed to meet her burden of proof. For the reasons discussed below, we affirm.

Smith commenced this action pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 *et seq.,* seeking money damages for injuries resulting from a swine flu inoculation Smith received under the National Swine Flu Immunization Program of 1976, 42 U.S.C. § 247b(j)–(*l*), Pub.L. No. 94–380, 90 Stat. 1113 (1976) (amended 1978).

At trial both parties presented a considerable amount of technical evidence concerning Smith's medical history and its diagnostic interpretation. We will summarize briefly the district court's findings of fact.

Since 1948 Smith had been a regular patient at the Sisco Clinic in Springdale, Arkansas. Over the years Smith had complained of recurrent headaches occasionally accompanied by nausea and vomiting. She also complained of loss of appetite, weakness, dizziness, generalized aching, fever, tenseness, depression, soreness of the abdomen, and easy fatigue. She had been hospitalized several times between 1948 and 1969 concerning those ailments.

On November 12, 1976, Smith went to the Fayetteville Diagnostic Clinic for a physical examination. The examining physician noted in the medical record that Smith was continuing to experience migraine headaches which had recently been quite prominent. She also stated that she had been tense and depressed. Smith returned to the clinic on November 19, 1976, to discuss the results of the laboratory tests. Smith noticed a sign on a desk in the clinic stating free swine flu immunizations were availa-

---

* The Honorable William R. Collinson, United States Senior District Judge for the Eastern and Western Districts of Missouri, sitting by designation.

1. The Honorable H. Franklin Waters, Chief Judge, United States District Court for the Western District of Arkansas.

ble. Smith requested and received such immunization on that day. She was forty-nine years old at that time.

After her inoculation, Smith continued to experience symptoms similar to those she complained of previously as well as symptoms characteristic of some type of unspecific neurological disorder. From December 5, 1975, until May 1978, Smith was hospitalized frequently. The examining physicians could not conclusively diagnose Smith's neurological ailment. The offered diagnosis of the initial symptoms was recurrent urinary tract infection and possible degenerative disease of the brain with muscular weakness affecting one side of the body, cause unknown. A subsequent diagnosis, taking into consideration the additional symptoms, also revealed acute kidney inflammation, due to bacterial infection, some tissue death, sodium depletion and premature ventricular beats.

GBS is a rare peripheral nerve disorder affecting the nervous system and the large muscles. Persons inoculated with swine flu vaccine have an increased risk of developing GBS primarily within the first eight weeks following vaccination. With the increased incidence of GBS following the government immunization program, NINCDS researchers reviewed available medical literature and developed diagnostic criteria to aid in the diagnosis of GBS. Utilizing this criteria, the district court noted that although Smith experienced certain symptoms consistent with a diagnosis of GBS, she also developed atypical symptoms and failed to exhibit typical ones. *Smith v. United States,* 557 F.Supp. 42, 47–50 (W.D.Ark. 1982).[2]

After careful consideration of all the evidence presented, the district court made extensive detailed findings of fact and concluded that "the Court is not persuaded by a preponderance of the evidence that plaintiff's malady, whatever it was, was proximately caused by her November 19, 1976, swine flu vaccine." *Id.* at 50. To further clarify, the court stated:

The burden of proof is upon the plaintiff to establish by a preponderance of the evidence that plaintiff suffered from GBS or some other affliction which was proximately caused by the inoculation.

"Preponderance of the evidence" means the greater weight of evidence. It is the evidence which, when weighed with that opposed to it, has more convincing force and is more probably true and accurate. If, upon any issue in the case, the evidence appears to be equally balanced, or if it cannot be said upon which side it weighs heavier, then plaintiff has not met his or her burden of proof. AMI 202. *Hays v. Williams,* 115 Ark. 406, 171 S.W. 882 (1914); *Smith v. Magnet Cove Barium Corp.,* 212 Ark. 491, 206 S.W.2d 442 (1947); *cf. Words and Phrases,* Vol. 33, pp. 383–605 (West Publishing Co.).

Because of the confusing, conflicting and theoretical nature of the proof submitted at trial, the Court concludes that the evidence is equally balanced as to whether plaintiff suffered from GBS, or, at least, the Court is unable to decide upon which side the evidence weighs more heavily.

Likewise, the Court is unable to decide upon which side the evidence weighs more heavily with regard to whether any malady was caused by the vaccine in this case.

The Court is not unsympathetic to the plaintiff. Swine flue products liability litigation is complicated and extremely

---

2. Smith argues that the trial court erred in giving any weight whatsoever to the NINCDS standards. Smith claims that these criteria are nothing less than an *ex post facto* definition of GBS containing highly restrictive guidelines. In support of her position Smith cites *Unthank v. United States,* 533 F.Supp. 703 (D.Utah 1982), stating that the NINCDS standards were not considered in that case. In *Unthank,* however, the court was not deciding whether the

plaintiff had GBS. Instead the court had to determine if another malady had been proximately caused by the swine flue vaccination. In the present case the district court utilized the NINCDS standards only on the issue of GBS. Smith cites no authority for her position that the court is precluded from considering the NINCDS criteria in determining whether Smith had contracted GBS. Likewise, we could find no authority for that proposition.

difficult, and counsel for the plaintiff and the United States have presented their respective positions with exceptional skill and ability and are to be commended for their efforts. The simple fact is that, at least in the present case, no one can ever ascertain what afflicted the plaintiff or what caused it. Inferences and possibilities abound, but this is no substitute for proof, which is obviously not available due to the state of scientific research at present, under the circumstances of the instant case.

*Id.* at 51–52.

We have carefully reviewed the record and we find no error of law or fact on the part of the district court. Accordingly, we affirm on the basis of the district court's opinion. *See* 8th Cir.R. 14.