**In re Leland WOLSKY and Karen Wolsky, Debtors.**

**Bankruptcy No. 83–05094.**

United States Bankruptcy Court, D. North Dakota.

Sept. 7, 1984.

See also Bkrtcy., 35 B.R. 481.

Roger Minch, Fargo, N.D., for debtors.

Paul Scheerer, Minneapolis, Minn., for First Bank of North Dakota-Jamestown.

Jay Carlson, Fargo, N.D., for Committee of Unsecured Creditors.

William Westphal, Minneapolis, Minn., U.S. Trustee.

## ORDER

WILLIAM A. HILL, Bankruptcy Judge.

The Debtors, Leland and Karen Wolsky, filed for relief under Chapter 11 of the Bankruptcy Code on February 17, 1983. First Bank of North Dakota—Jamestown, a creditor in these proceedings, filed with the Court on August 13, 1984, a motion for relief from the automatic stay pursuant to section 362(d) of the Bankruptcy Code. The Unsecured Creditors Committee filed an objection to First Bank's Motion on August 27, 1984. The Debtors also filed a response to First Bank's Motion on August 27, 1984, objecting to the relief it requested. A hearing on First Bank's Motion was held before the undersigned on August 28, 1984.

### FINDINGS OF FACT

Leland Wolsky is indebted to First Bank of North Dakota—Jamestown in the amount of $559,899.61 under a promissory note dated May 2, 1982. Interest on that obligation floats between a rate of 15% and a maximum rate of 18%. Leland Wolsky's obligation to First Bank is secured by a security agreement dated December 21, 1981, covering all farm machinery and equipment whether now owned or hereafter acquired by the Debtor. First Bank's security interest in the farm equipment is perfected by a Financing Statement filed with the Register of Deeds for Stutsman County, North Dakota.

Leland Wolsky compiled a schedule of his equipment dated April 7, 1982. Wolsky valued his equipment as of that date at $818,560.00. The Federal Deposit Insurance Corporation has a lien noted on the title of three vehicles listed by the Debtor in his schedule of equipment. The Debtor assigned a value of $82,000.00 as of April 1982 to those three vehicles. Wolsky also noted that John Deere claims a purchase money security interest in various John Deere equipment owned by the Debtor. John Deere filed a proof of claim with the Court on March 25, 1983, asserting a claim in the amount of $150,783.41. Leland Wol-

sky also prepared a revised schedule of his farm equipment, citing therein the estimated value of the equipment as of August 1984. Wolsky identified at the hearing additional items which were mistakenly omitted from the updated schedule of equipment. Wolsky estimated that the present market value of all the property, including the items omitted from the revised schedule, amounted to $739,800.00. Leland Wolsky acknowledged that he has continued to use the machinery and equipment throughout the pendency of his reorganization proceeding and that the equipment is necessary for his continued farm operations. The Debtor has insured the property, but First Bank is not named as an additional loss payee on the policy. First Bank last received a payment on its claim in December of 1982.

## CONCLUSIONS OF LAW

■ The Court must grant relief from the statutory stay of 11 U.S.C. § 362 upon a showing of (1) cause, including a lack of adequate protection for the creditor's interest in property, or (2) that the debtor has no equity in the property and the property is not necessary to an effective reorganization. 11 U.S.C. § 362(d). In the present matter, the equipment which has been pledged as collateral for the First Bank loan is clearly necessary for the Debtors' continued farming operation. Consequently, relief from the automatic stay will be granted in this instance only upon a sufficient showing of cause. The Debtor in this instance acknowledges that First Bank's interest in the property is not adequately protected and proposes to make a payment to compensate for the future depreciation of the equipment. Section 361 of the Bankruptcy Code indicates that adequate protection may be provided by periodic cash payments to the extent that the automatic stay results in a decrease in the value of the creditor's interest in the property. This Court has previously indicated that "[a]t a minimum [adequate protection] requires that the creditor be protected to the extent that the value of its lien will not be impaired by a *continuation* of the stay." *In*

*re Rott*, Bankruptcy No. 84–05050 (Bankr. D.N.D. July 5, 1984) (emphasis added). First Bank contends in this instance that the Debtors' promise to pay for the future depreciation of the property does not constitute adequate protection because the payment does not compensate for the decrease in value which the Bank's interest has experienced since the commencement of the bankruptcy proceeding. The issue thus presented to the Court in this instance is whether a debtor must provide adequate protection for the value of the creditor's secured interest as of the commencement of the bankruptcy proceeding or as of the date the creditor moves for relief from the automatic stay.

■ The amount of a claim is determined under 11 U.S.C. § 502(b) as of the date of the filing of a bankruptcy petition. In contrast, section 1129(a)(7) of the Bankruptcy Code requires that a court confirm a plan of reorganization only where a holder of a claim receives "property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under Chapter 7 of this title *on such date.*" 11 U.S.C. § 1129(a)(7)(A)(ii) (emphasis added). Accordingly, it is arguable that while the amount of a creditor's claim is fixed as of the date the bankruptcy proceeding is commenced, the valuation of the secured portion of that claim should be made on or near the date of confirmation of a debtor's plan of reorganization. Where the value of collateral decreases during the pendency of the bankruptcy proceeding, an undersecured creditor will receive that difference in value between the commencement and confirmation dates through payments of adequate protection. Courts have recognized that "adequate protection furnished to a creditor pursuant to § 361 assures the maintenance, and thus, recoverability of the lien value in the interim between the filing of the petition and acceptance of the plan of reorganization." *In re Pine Lake Village Apartment Co.*, 19 B.R. 819, 825 (Bankr.S.D.N.Y. 1982). *See also In re Al-*

*yucan Interstate Corp.*, 12 B.R. 803, 808 (Bankr.D.Utah 1981) ("the purpose of adequate protection is to assure the recoverability of [the value of the creditor's lien] during the hiatus between petition and plan, or in the event the reorganization is stillborn, between petition and dismissal."). Thus, debtors must propose payments which will adequately compensate the undersecured creditor from prior decreases in the value of its collateral incurred since the commencement of the bankruptcy proceeding. Absent evidence of an imminent dismissal of the case or confirmation of a plan, the debtors must also provide as adequate protection compensation for any decline in value which the property is likely to suffer in the foreseeable future. To the extent that prior decisions of this Court are inconsistent, those decisions are clarified by the "minimum standards" of adequate protection set out in this opinion.

■ The value of First Bank's secured interest as of the commencement of the bankruptcy proceeding is not directly presented into evidence. The Bank's interest as of February 17, 1983, may be extrapolated, as follows:

1. Market value of all property as of 4/7/82 (from Ex. 4) — $818,560.00
2. Market value of all property as of 4/7/82 (less FDIC units) (–$82,00) — 736,560.00
3. Depreciation from 4/7/82 to 2/17/83 (10% per annum/$6,138.00 mo. for 10 mos.) — –61,380.00
4. Market value of all items as of 2/17/83 — $675,180.00
5. Less amount due John Deere as of 2/17/83 (John Deere proof of claim filed 3/25/83 shows pay-off balance of $146,000.00 as of 4/1/83; accrued interest from 2/17/83 is $2,028.00 figured at $48.29 per diem × 42 days) — –143,972.00
6. Value of Bank's interest as of 2/17/83 — $531,208.00

1. Present market value of all property (from Ex. 11 + additional items) — $739,800.00
2. Present market value less FDIC units (–$83,000) — 656,800.00
3. Less present amount due John Deere (claim as of April 16, 1984 plus accrued interest figured at $48.29 per diem × 134 days plus attorney's fees) — –150,478.00
4. Present value of Bank's interest — $506,322.00

NET DECREASE IN VALUE SINCE FILING — $ 24,886.00

An analysis of the evidence produced at the hearing indicates that the Bank's collateral has experienced a decrease in value in the approximate amount of $25,000.00. An immediate payment to First Bank to compensate it for the decrease in its secured claim would constitute adequate protection to this date. The Debtors also calculate that their future use of the equipment will cause it to further depreciate in the amount of $25,000.00. Adequate protection would also compensate the Bank for this future loss in value. Accordingly, the Court will condition continued imposition of the automatic stay accordingly.

For the reasons stated,

IT IS ORDERED:

That First Bank of North Dakota—Jamestown be entitled to relief from the automatic stay in the event the Debtors do not make payment as and for adequate protection on or before September 21, 1984, in the amount of $25,000.00.

That First Bank of North Dakota—Jamestown be entitled to relief from the automatic stay in the event the Debtors do not make an additional payment of $25,000.00 on or before January 1, 1985 as and for adequate protection to March 1, 1985.

That the Debtors' adequate protection payments be secured to the extent of $50,000.00 by a lien on 1984 crops to be subordinate to the Debtors' operating loan with Dakota Bank & Trust Co. of Fargo.