In re Neil **MAGNUS** and Mavis **Magnus,**
**husband and wife, Debtors.**

**Bankruptcy No. 84–05547.**

United States Bankruptcy Court,
D. North Dakota.

June 18, 1985.

Daniel Wentz, Fargo, N.D., for debtors.

Ralph Carter, Grand Forks, N.D., for Federal Land Bank of St. Paul.

William Westphal, Minneapolis, Minn., United States Trustee.

## MEMORANDUM AND ORDER

WILLIAM A. HILL, Bankruptcy Judge.

The Debtors on April 17, 1985, filed a Motion for authorization to sell a certain tract of farmland free and clear of liens and to use the cash proceeds therefrom. The first mortgage holder, Federal Land Bank of Grand Forks (FLB), has objected believing that the proposed sale will not afford it adequate protection of its interest. The matter was heard on May 30, 1985, and both parties thereafter filed briefs bearing on the issue.

### FINDINGS OF FACT

#### 1.

The Debtors own 554 acres of farmland worth approximately $525.00 per acre for a total fair market value of $290,850.00. FLB has a first mortgage on the Debtors' property as well as a first mortgage on 160 acres owned by Kathleen Magnus which is also worth approximately $525.00 per acre. The total value of all real property held as security by FLB is $374,850.00. In addition to the land, FLB has a security interest in the Debtors' stock in FLB worth $24,600.00 which sum would be subtracted from the total indebtedness. As of May 30, 1985, the Debtors' outstanding indebtedness to FLB was $319,454.95 which, when reduced by the stock, leaves an indebtedness of $294,854.95. Interest is accruing at a per diem rate of $101.50.

By their Motion, the Debtors wish to sell 82 acres of their land, 79 acres of which are tillable, for a total price of $270.00 per acre for a total sale price of $22,140.00. The 82 acres is not prime farmland and was acquired in 1983 for $300.00 per acre. The land is sandy loam with its best use being hay production although the perspective purchaser hopes to raise potatoes on it. Neither the circumstances nor terms of the sale were developed, and no appraisal testimony was presented. The evidence does not establish that $270.00 per acre is the fair market value of the 82 acres. Although the sale price is $270.00 per acre, there is no evidence suggesting that figure

to be the per acre fair market value or that the 82 acres is for some reason worth less on a per acre basis than the rest of the Debtors' land. Neil Magnus testified at the hearing that the value of the 82 acres has declined since he purchased it in 1983; yet, in Schedule A–2 filed with the Court on December 10, 1984, he stated it had a value of $525.00 per acre. Jerry Simonson, an FLB officer, agreed with Debtors' counsel when examined by him that the average value of the Debtors' land was $525.00 per acre and that $380,000.00 was the approximate value of all land mortgaged to FLB. Mr. Simonson, when quizzed by Debtors' counsel, said he could not disagree with Debtors' belief that the land mortgaged to FLB was worth $525.00 per acre. Thus, even at the May 30, 1985, hearing, the Debtor was persistent in his opinion that his land was worth $525.00 per acre, going so far as to elicit an admission from FLB's officer on the point. Mr. Simonson's testimony, coupled with the Debtors' own Schedule A–2 valuation which was not refuted at the hearing, confutes Neil Magnus' later testimony suggesting that the fair market value of the 82 acres is only $270.00 per acre.

The Debtors wish to apply the proceeds of the sale towards purchase of two used silos which they will then affix to the remaining land mortgaged to FLB. The price of the two used silos is $33,000.00. The Debtor, Neil Magnus, did not know how old the silos are or what the rate of depreciation might be but suggested that they are fairly new. The person selling the used silos is willing to extend a warranty similar to that available on new silos. Comparable new silos would cost $28,-000.00 each. The silos will be used for feed storage and, according to Neil, will enhance the productivity of his dairy herd. He agreed on cross-examination that the silos would have no value to any farmer except a dairy farmer.

As adequate protection for FLB's interest, the Debtors have offered a replacement lien in the silos which they argue are worth $33,000.00—$11,000.00 more than the value of the 82 acres being sold. This,

say the Debtors, is at a minimum the indubitable equivalent of FLB's interest in the 82 acres. In fact, they argue that FLB's interest will be enhanced by $11,000.00. FLB takes the position that the replacement lien in the two silos is not the indubitable equivalent of its interest in the 82 acres.

## CONCLUSIONS OF LAW

Section 363(e) of the Bankruptcy Code provides that whenever a debtor proposes to use, sell, or lease property of the estate in which a creditor has an interest, the court shall, on request of the creditor, "prohibit or condition such use, sale or lease as is necessary to provide adequate protection for such interest". As to issue of adequate protection, the burden rests with the debtor. 11 U.S.C. § 363(o)(1).

Adequate protection is not defined in the Bankruptcy Code itself beyond setting out three non-exclusive methods of affording adequate protection. These include: providing a secured creditor a replacement lien to the extent that such use or sale results in a decrease in the value of its interest in the property; or any other relief that will afford the creditor the indubitable equivalent of its interest in the property. Although the concept of adequate protection is a flexible one, it encompasses the basic constitutional requirement that a creditor's interest in property cannot be in any respect impaired or subjected to increased risk without assurance that the creditor will realize the benefit of its bargain. *In re American Mariner Industries, Inc.*, 734 F.2d 426 (9th Cir.1984). The Eighth Circuit Court of Appeals recently wrangled with the concept of adequate protection in context of an application to use collateral in the case of *In re Martin*, 761 F.2d 472 (8th Cir.1985). This Court is bound by the Eighth Circuit decision. In considering the concept of adequate protection, the appellate court considered the inclusion of the phrase "indubitable equivalent" in section 361(3) to be most significant, concluding that any pro-

posal for adequate protection "should as nearly as possible under the circumstances of the case provide the creditor with the value of his bargained for rights", *citing American Mariner* at 435. In its decision, the Eighth Circuit recognized that courts should be flexible in considering adequate protection in a particular case gauging it against the nature of the collateral and the debtor's proposed use of it. The court pointed out, however, that in no event should this flexible approach operate to the detriment of the secured creditor's interest. Basic to consideration of whether an offer of adequate protection is appropriate in a particular case, a bankruptcy court should: 1) determine the value of the secured creditor's interest; 2) determine the risks to that value that will result from the debtor's use of the property; and most importantly, 3) determine whether the adequate protection proposal protects that value from the risks it is being exposed to. The appellate court in two instances stated that in balancing the proposed adequate protection against the risk exposure, the bankruptcy court must make that judgment "consistent with the concept of indubitable equivalence". Simply stated, the inquiry in this regard is whether the proposed use places the creditor's interest at risk despite the offer of adequate protection. As previously noted, the burden of proof with regards to adequacy of the adequate protection rests with the debtor. Applying the *Martin* test to the instant case, the Court finds first of all that the value of Federal Land Bank's interest entitled to protection is $43,050.00, this being the fair market value of 82 acres at $525.00 per acre. The risk to FLB's interest resulting from the Debtors' proposed sale of the 82 acres may be a complete loss of its interest. First of all, the 82 acres are being sold for what appears to be substantially less than fair market value resulting in an immediate and unrecoverable loss of $20,910.00. The replacement collateral consists of two used silos having a purchase price of $33,000.00. The purchase price of depreciable equipment is not tantamount to that equipment's inherent worth or value. The silos are of

uncertain value and are subject to physical removal, destruction as well as depreciation. In no respect can a security interest in the silos be said to be the indubitable equivalent of an interest in real property. The risk to FLB of a complete loss of its interest in the real property is not lessened to any great degree (if at all) by the Debtors' offer of a replacement lien in the silos. Given the facts of this case, the Debtors' offer of adequate protection, being measured against the concept of indubitable equivalence, does not protect FLB's interest from the risk it would be exposed to as a consequence of the land sale.

Even if the purchase price of the silos equaled or exceeded FLB's interest in the real property, it would be questionable whether a replacement lien in used silos could serve as adequate protection for that interest, given the concept of indubitable equivalence. As noted in *In re Berens*, 41 B.R. 524 (Bankr.D.Minn.1984):

"[T]he standard of adequate protection to be afforded a creditor when its cash collateral is being used should be a high one. Replacement liens in 'hard assets' such as land or other minimally depreciable assets would be in most instances sufficient. However, to me, a lien in a crop to be grown with all of the other *risks* attendant to that is not sufficient adequate protection except where a significant profit margin is very likely or a minimal guarantee of payment is proffered through crop insurance. To ask a creditor to release cash requires a strong likelihood of return. The uncertainties of the weather, crop prices, and all the other uncertainties inherent in farming increase the insecurity of a replacement lien solely in crops to be grown."

*In re Berens*, 41 B.R. at 528 (emphasis added). *See also In re Berg*, 42 B.R. 335 (D.C.N.D.1984). The key word in the foregoing quote is "risk". In the case at bar, FLB is being offered a replacement lien in used silos of unknown age, unknown depreciation and uncertain value. While the silos have value to the Debtor in his dairy operation, the evidence suggests they may

have little value to anyone else. Land is collateral of a high quality, and a lien intended as adequate protection for the loss of an interest in such collateral must be in something of similar quality. Otherwise, the creditor's interest is placed at risk.

Accordingly, and for the reasons stated, the Debtors' Motion for authority to sell the 82 acres of land and use the proceeds thereof free and clear of the lien of Federal Land Bank is DENIED.

IT IS SO ORDERED.