In re Leland WOLSKY and Karen Wolsky, Debtors.

Bankruptcy No. 83–05094.

United States Bankruptcy Court, D. North Dakota.

Oct. 4, 1985.

Roger Minch, Fargo, N.D., for debtors.

Jay Carlson, Fargo, N.D., for Unsecured Creditors Committee.

Paul Scheerer, Minneapolis, Minn., for First Bank.

William Westphal, U.S. Trustee, Minneapolis, Minn. (information).

## MEMORANDUM AND ORDER

WILLIAM A. HILL, Bankruptcy Judge.

First Bank of North Dakota—Jamestown (FIRST BANK), on August 13, 1984, filed a Motion for Relief From Stay pursuant to section 362(d) of the Bankruptcy Code. This Court's decision of September 7, 1984, 46 B.R. 262, entered in consequence of that Motion was appealed to the United States District Court for the District of North Dakota which, by Order entered June 10, 1985, remanded the case to the Bankruptcy Court for further proceedings to determine the issue of adequate protection for present value, consistent with the standard recently enunciated in *In re Martin*, 761

F.2d 472 (8th Cir.1985) and *In re American Mariner Industries, Inc.,* 734 F.2d 426 (9th Cir.1984). Pursuant to this Court's Order of June 24, 1985, an evidentiary hearing was held on July 16, 1985, at which time the parties presented evidence consistent with the Order of Remand. On the heels of the Order of Remand, First Bank, by Motion filed June 27, 1985, renewed its motion for relief from stay alleging that the Debtors have failed to provide it adequate protection consistent with the Opinion of the District Court. By its present Motion, First Bank seeks the opportunity cost of the value of the collateral less the $50,000.00 payment made by the Debtors subsequent to the original 1984 relief from stay hearing, at the rate of 15% which is the current contract rate. This renewed Motion for Relief From Stay was heard concurrent with the evidentiary hearing and is also addressed herein.

## FINDINGS OF FACT

This Court's findings of fact from the original hearing, reported at *In re Wolsky,* 46 B.R. 262 (Bankr.D.N.D.1984), as relevant to this matter, are summarized as follows:

Debtors, Leland and Karen Wolsky, were indebted to First Bank for $559,899.61 as of the date of filing. The Debtor's Petition, signed by both Leland and Karen Wolsky, listed First Bank as having a security interest in all farm machinery and equipment. After adjusting for superior security interests held by other creditors, the secured value of First Bank's interest was determined to be $531,208.00 as of the date of filing. The Court held that the stay would be lifted unless the Debtors made two $25,000.00 payments to First Bank as adequate protection for past and future decline in the value of the collateral. *In re Wolsky,* 46 B.R. at 265.

Since the original hearing, the Debtors have paid First Bank the two $25,000.00 payments which this Court found was necessary to prevent a relief from stay. *Id.* Evidence at the July 16 evidentiary hearing indicated that the payments were applied by First Bank against the Debtors' principal debt, thereby reducing the principal balance of the Debtors' obligation to $481,208.00. With regards to the principal issue of opportunity cost, the Bank introduced testimony of its president, Densel Mason, as to interest rates. He stated that the contract interest rate is variable with a floor of 15% and a ceiling of 18%, with the rate between February 1983 and July 16 at 15%. Based on these calculations, he concluded that the interest accrued through July 17, 1985, was $187,251.06. In argument, First Bank's counsel urged that the Bank is entitled to the sum of $187,251.06 as its opportunity cost from February 83 through July 16, 1985, as calculated by Mr. Mason (15% interest on $531,208.00 less the $50,000.00 paid).

At the July 16 hearing, Karen Wolsky, in an effort to establish an interest in the machinery and equipment, stated that she has worked on the farm with responsibilities for the house and various farm chores. She testified that she was unaware that all the farm machinery was going to be used as collateral and that she did not specifically authorize her husband to give the Bank a lien on her interest. Mrs. Wolsky testified that she did not know if she signed any purchase money contracts for the machinery but that she put as much into the farm as her husband did.

## CONCLUSIONS OF LAW

### 1.

At the evidentiary hearing on remand, the Debtors alleged for the first time that First Bank's security interest, signed by Leland Wolsky, is only valid as to one-half of the equipment and machinery owned by the Debtors. The Debtors' basis for this contention is that Karen Wolsky owns one-half of the collateral, and she did not sign the security interest. This issue will be addressed preparatory to consideration of the adequate protection problem.

The Debtors' Chapter 11 Petition and Schedules, though not conclusive of ownership interest in property, are indicative of

the Debtors' belief as to the ownership status of their property at the time of filing. The Debtors' Petition, signed by both Leland and Karen Wolsky, lists First Bank as having a security interest in all of the machinery and equipment. The validity of First Bank's security interest was not raised at the original hearing on this matter held on August 29, 1984. Finally, approximately two and one-half years following the commencement of the Chapter 11 case, the Debtors file their objection to First Bank's Proof of Claim and allege on remand that one-half of the machinery and equipment is owned by Karen Wolsky and not subject to First Bank's security interest.

■ A bankruptcy court is bound by state law in determining ownership interest in property. *See In re Davison*, 738 F.2d 931, 933–34 (8th Cir.1984). This Court discussed a similar ownership issue in *In re Asbridge*, 45 B.R. 564 (Bankr.D.N.D.1984) and concluded that marital status alone is not sufficient to prove an ownership interest in property. *Id.* at 565. Evidence as to an individual's contribution towards management of daily affairs, negotiation on various loans, and purchase of machinery and equipment is to be considered. *See id.* Moreover, the Debtors have not presented any evidence of purchase documents or partnership agreements which would indicate joint ownership.

■ This Court is unclear from the less-than-complete testimony presented at the evidentiary hearing on what basis Karen Wolsky purports to own an unsecured one-half interest in machinery and equipment. We have great difficulty in ascertaining how she could have an ownership interest in the machinery and equipment if she has not been extensively involved in the management, decision-making and daily activities of the farm operation. If, on the other hand, she has been extensively involved in the management, decision-making and daily activities of the farm, she may then have a partnership interest in the ma-

chinery and equipment. The existence of a partnership is determined on a case-by-case basis. *Gangl v. Gangl*, 281 N.W.2d 574, 579 (N.D.1979). Certain critical elements necessary to the existence of a partnership include: "an association, or an intention to be partners; co-ownership of, and a community of interest in, the business of the partnership; and the profit motive." *Hoggard v. Rotzien*, 200 N.W.2d 112, 115 (N.D. 1972). The North Dakota Supreme Court has held that: "[c]ontrol is an indispensable component of co-ownership which, when combined with profit sharing, strongly suggests the existence of a partnership." *Gangl*, 281 N.W.2d at 580. The North Dakota Supreme Court further stated that "a person may be a partner even though he has entrusted control of the business exclusively to his associates. The question then becomes whether or not the participant had the *right* to exercise control in the management of a business." *Id.*

■ Partnerships may arise from contract, or they may be implied. *Schlichenmayer v. Luithle*, 221 N.W.2d 77, 82 (N.D. 1974). Further, ostensible partnership or partnership by estoppel may arise as to a third party who relies on conduct of individuals which justifiably leads the third party to believe a partnership exists. *Id.* at 82. If the Wolsky's or First Bank had proven that a partnership existed, Leland Wolsky would have had the authority, as an agent of the partnership, to grant the First Bank a security interest without Karen Wolsky's signature. N.D.Cent.Code § 45–06–01 (1977); *see also Maercklein v. Maercklein*, 64 N.D. 733, 256 N.W. 180, 181–82 (N.D. 1934).

■ The Debtors have not met their burden of proving Karen Wolsky's actual ownership in the property. *Davison*, 738 F.2d at 936 (debtors were held to have burden of proving ownership interest). This Court is not satisfied, in light of the foregoing case law, that Karen Wolsky's marital rights alone provide her a one-half interest in the farm machinery and equipment.[1] More-

---

**1.** The Debtors cite *Briese v. Briese*, 325 N.W.2d

245 (N.D.1982), for the proposition that Karen

over, Karen Wolsky has not contributed a substantial amount of outside income to the purchase of the machinery and equipment. Thus, any legal interest which she asserts in the property must be derived from her efforts in the farming operation and would be in the form of a partnership interest, thereby giving Leland Wolsky the authority to encumber the machinery and equipment by signing a security interest. This Court concludes, irregardless of Karen Wolsky's basis for asserting an ownership interest, that First Bank holds a valid security interest in all of the machinery and equipment.

## 2.

The core issue in this case, and the pivotal issue on remand, is to what extent is First Bank entitled to adequate protection for the present value of its collateral, perhaps more appropriately explained by the Eighth Circuit as the entitlement "to interest for any delay in repayment" of obligations. *In re Martin*, 761 F.2d at 477. In the past, this Court, as have a number of bankruptcy courts, has found that secured creditors are adequately protected under section 361 of the Bankruptcy Code when they are protected against depreciation of their collateral. *See In re Wolsky*, 46 B.R. at 264–65. *See also In re Keller*, 45 B.R. 469 (Bankr.N.D.Iowa 1984); *In re South Village, Inc.*, 25 B.R. 987 (Bankr.D. Utah 1982). We have been reluctant to adopt *American Mariner*, and to consider compensation for delay in repayment of an obligation as an interest which must be adequately protected, because of the destructive effect which *American Mariner's* rationale would have on many agriculture reorganizations. *See In re Keller*, 45 B.R. at 473. However, in view of *Martin*, we are constrained to adopt the rationale of *American Mariner* in considering adequate protection. *In re Magnus*, 50 B.R. 241, 243 (Bankr.D.N.D.1985).

Wolsky owns one-half of the machinery and equipment. However, *Briese* deals with the equitable distribution of property in a divorce proceeding and not the issue of legal ownership

The Ninth Circuit, in *American Mariner*, held that the interest of a secured creditor which needed to be adequately protected under section 361 included, not only the value of the collateral, but *"an interest of an entity* in property ... to the extent that the stay ... results in a decrease in *the value of such entity's interest in such property"*. *American Mariner*, 734 F.2d at 430 (citing 11 U.S.C. § 361). The Ninth Circuit, following a discussion of pertinent Senate and House Reports, concluded that the secured creditor, though *"not* entitled to the 'absolute right to his bargain'"*, id.* at 431, "should as nearly as possible under the circumstances of the case [be provided] with the value of his bargained for rights". *Id.* at 435. Thus, the first step in analyzing a creditor's right to adequate protection is to determine what benefit of the creditor's bargain is being denied because of bankruptcy.

■ The benefit of a secured creditor's bargain, before being denied by reason of the automatic stay in bankruptcy, is threefold: (1) the creditor may receive payments on the principal and interest payments as contracted for as long as the debtor has sufficient funds, or chooses to comply; (2) when payments are in default, the creditor is entitled to repossess or foreclose on the property pursuant to state law; and (3) upon default, the creditor has the right to eventually sell the collateral and reinvest the proceeds. It is the value attributable to the foregoing bundle of rights, which may be said to constitute the "benefit of a creditor's bargain" and which is entitled to adequate protection under the Bankruptcy Code.

■ In determining the amount of adequate protection required to protect the "benefit of a creditor's bargain", three key determinations must be made by this Court; to-wit:

(1) establish the value of the secured creditor's interest;

of property between two debtors as against a third party. Thus, *Briese* is neither persuasive nor controlling.

(2) identify the risk encumbent upon the secured creditor's collateral; and

(3) determine whether the value of the secured creditor's collateral is protected as nearly as possible against risk to that value consistent with the concept of indubitable equivalent.

*Martin,* 761 F.2d at 477.

The first and perhaps key step in an adequate protection analysis is to establish the value of the secured creditor's interest as of the date the debtor filed the petition for relief. *See id.* Value is to be determined on a case-by-case basis. *American Mariner,* 734 F.2d at 431. As mentioned earlier, one element of value which must be recognized is the actual value of the physical collateral alone. The value of the physical collateral as of the date of filing in the case at bar was $531,208.00. *Wolsky,* 46 B.R. at 265.

Another element of value which must also be considered, but which is more difficult to ascertain, is the "interest [that a secured creditor is deprived of] for any delay in repayment" of the debtor's obligation. *Martin,* 761 F.2d at 477. The exact meaning of this concept is lacking in clarity because of the various words and phrases employed by other courts in referring to it. The Ninth Circuit has referred to the concept as "compensation for the delay in enforcing ... rights against the collateral", *American Mariner,* 734 F.2d at 427, and as "interest on the present value of the collateral". *Id.* at 429. Our District Court, in its order on remand, referred to the interest as the "present value of the collateral". *In re Wolsky,* Civil No. A3–84–218, slip. op. at 4 (D.N.D. June 10, 1985).

This Court believes that the economic interest in need of protection, as described by the various courts' terminology, is analogous to the economic term of "opportunity cost"; this Court will consider the interest in this context in this and future cases. Although opportunity cost has not, to our knowledge, been defined by courts in the specific context of adequate protection, the concept of "opportunity cost" has been defined by the Eighth Circuit as those benefits lost because "resources devoted to particular operations are not free to be put to more profitable uses", *City of Cherokee v. ICC,* 727 F.2d 748, 750 (8th Cir.1984); *see Cartersville Elevator, Inc. v. ICC,* 724 F.2d 668, 670 (8th Cir.1984), which appears to be analogous to the interest referred to in *Martin* and *American Mariner.*

▇▇▇ The burden is on the creditor to prove to the Court the value of the interest which they are deprived of, in other words, their "opportunity cost". On first blush, section 362(g) [2] of the Code may lead one to believe that a creditor, by simply proving lack of equity in a debtor's property, has carried its burden of proof with respect to a 362(d) motion for relief from stay and has thereby created a presumption of lost opportunity cost unless rebutted by the debtor. Such an interpretation would, however, place an unreasonable and indeed insurmountable burden on virtually every debtor. Section 362(d) provides that a party in interest may obtain relief from stay for "cause". A creditor commencing an action for relief from stay has the initial burden of proving a prima facie case; cause must be shown to exist. *In re Royce,* 32 B.R. 63, 64 (Bankr.M.D.Pa.1983). The Eighth Circuit has essentially said as much in *First Nat. Bank of Denver v. Turley,* 705 F.2d 1024 (8th Cir.1983), where the court stated that, "[t]o obtain relief from an automatic stay under 11 U.S.C. § 362(d), a creditor must show the court that its interest in the debtor's property is sufficiently clear and in need of protection to justify exempting the property from the normal course of bankruptcy proceedings." *Id.* at 1026. If

---

**2.** Section 362(g) of the Bankruptcy Code provides, as follows:

In any hearing under subsection (d) or (3) of this section concerning relief from the stay or any act under subsection (a) of this section—

(1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and

(2) the party opposing such relief has the burden of proof on all other issues.

11 U.S.C. § 362(g)(1) and (2).

a creditor's only burden is to initiate a relief from stay action and establish the debtor's equity in the collateral, the debtor would virtually need to prove a creditor's case—prove the extent of the creditor's interest in need of protection—before attempting to establish that the creditor's interest is adequately protected. Such a result is contrary to the spirit of the Bankruptcy Code. A creditor can only show that its interest is in need of protection against lost opportunity cost, as mandated by the Eighth Circuit in *Martin,* by presenting facts establishing the opportunity cost in need of protection. Thus, only after a credit has proven a prima facie case under section 362(d)(1) of the Bankruptcy Code does a debtor have the burden of proving that the creditor's interest is adequately protected. *See Turley,* 705 F.2d at 1024; *In re Bobroff,* 32 B.R. 930, 931 (Bankr.E.D.Pa.1983). Each element of the prima facie case, unless otherwise stated by this Court, must be proven by a fair "preponderance of the evidence". "Preponderance of the evidence" has recently been defined by the Eighth Circuit Court of Appeals as meaning the greater weight of the evidence. *Smith v. United States,* 726 F.2d 428 (8th Cir.1984).

> It is the evidence which when weighed with that opposed to it has more convincing force and is more probably true and accurate. If upon any issue in the case, the evidence appears to be equally balanced, or if it cannot be said upon which side it weighs heavier, then plaintiff has not met his or her burden of proof.

*Smith,* 726 F.2d at 430 (citations omitted). Allegations made in the pleadings or closing arguments will not be recognized by this Court as evidence in furtherance of the creditor's burden.

■ Courts have generally been reluctant to set forth the elements necessary to establish a prima facie case for adequate protection based upon lost opportunity cost. Nevertheless, dicta from many courts have suggested what these elements may be. *See American Mariner,* 734 F.2d at 435 n. 12. *See also In re Bear Creek Ministorage,* 49 B.R. 454, 457 (Bankr.S.D.

Tex.1985). We conclude that a party seeking adequate protection must, at a minimum, prove by a preponderance of the evidence that (1) they have a valid security interest in property of the debtor; (2) the date, but for the bankruptcy, when receipts would have been realized from sale of the secured property; and (3) the date the proceeds would have been reinvested, together with the rate of return which would have been realized upon reinvestment. *Id.* at 457–59; *see American Mariner,* 734 F.2d at 435 n. 12.

■ Obviously, the initial element of a creditor's prima facie case is to prove that a valid security agreement actually exists. A filed proof of claim or recognition of a security interest in a petition, absent any objection or amendment, constitutes prima facie evidence of this element. With regard to this element, it has been previously determined that First Bank has a valid security interest in all the collateral.

■ The second element which a moving party should establish is when, but for the bankruptcy, proceeds would have been realized from a sale of the debtor's property. When real property is at issue, for example, creditors are often faced with a decision of either selling the property at a foreclosure sale and often times receiving a minimal amount or, in the alternative, of buying the property at a foreclosure sale, holding it during the redemption period, and privately selling the property sometime thereafter. *Bear Creek Ministorage,* 49 B.R. at 457. Evidence in various cases may result in different determinations as to what course of action a prudent creditor would adopt. *Id.* The date when a creditor would have begun to receive payment from sale of secured property is the point from which adequate protection for lost opportunity cost should begin to accrue. *American Mariner,* 734 F.2d at 435 n. 12; *Bear Creek Ministorage,* 49 B.R. at 457. Finally, the movant must prove the date the proceeds would have been reinvested and the rate of return which it would have

received upon reinvestment. *Id.*[3] This rate is not necessarily the contract rate on the debt, as creditors are not entitled to damages under the Code; they are only entitled to having their opportunity cost during the bankruptcy proceeding protected. *See American Mariner,* 734 F.2d at 435 n. 12. Hence, the contract rate is appropriate only when it is the rate of return a creditor could expect to receive on reinvestment. *See Grundy Nat. Bank v. Tandem Min. Corp.,* 754 F.2d 1436, 1441 (4th Cir.1985); *American Mariner,* 734 F.2d at 435 n. 12.

As was discussed earlier in this Opinion, adequate protection protects the benefit of a secured creditor's bargain throughout the bankruptcy proceeding. In the context of an insolvent debtor in default, the benefit of a secured creditor's bargain is the right to foreclose or repossess the collateral and reinvest the proceeds therefrom. Thus, the rate of return which the creditor would receive upon reinvestment, and not the contract rate of interest, seems to be the more appropriate figure to use in establishing the lost opportunity cost caused by continuation of the stay.

The above discussion, in its entirety, pertains to the first step of the Eighth Circuit's approach to adequate protection—establishing the value of the interest. Next, the risk to the secured creditor's collateral must be considered. *Martin,* 761 F.2d at 477. At the initial hearing, the net decrease in the value of the secured creditor's collateral since filing was found to be $24,886.00; the value of the collateral being $506,322.06. Obviously, $24,886.00 was at risk. It was further found that the collateral would depreciate an additional $25,000.00 from continued use. Again, this probability of depreciation also put the creditor's interest in the value of the collateral at risk to the extent of an additional $25,000.00. As adequate protection, the

Debtors made two $25,000.00 payments to First Bank. At the July 16 evidentiary hearing, the net value of First Bank's interest in the collateral was $495,972.14; thus, instead of the projected depreciation of $25,000.00, only approximately $10,000.00 depreciation occurred, leaving a depreciation cushion of approximately $15,000.00 remaining. Thus, the value of First Bank's collateral is not seriously at risk.

The final step in an adequate protection analysis, as established in *Martin,* is to determine whether the value of a creditor's interest is protected as nearly as possible against risk to that value consistent with the concept of indubitable equivalence. *Id.* If a sufficient equity cushion does not exist to adequately protect the creditor's interest, then cash payments or the "indubitable equivalent" should be provided. *See Bear Creek Ministorage,* 49 B.R. at 459. In *Martin,* the Eighth Circuit concluded that "indubitable equivalence" requires "such relief as would result in the realization of value". *Martin,* 761 F.2d at 477 (quoting *In re Sheehan,* 38 B.R. 859, 864 (D.S.D.1984)). Indubitable equivalence, as considered in structuring a proposal for adequate protection, must be determined on a case-by-case basis to permit the debtor's "maximum flexibility". *Martin,* 761 F.2d at 474. It is important to note that a consideration of adequate protection or indubitable equivalence is not required until consideration of the first two steps in the adequate protection analysis lead to a conclusion that a creditor has an interest of value which is at risk.

First Bank, at the original hearing, established the actual value of the physical collateral. This figure was revised at the July 16 evidentiary hearing, but the payments already made by the Debtors to protect against depreciation are still sufficient to adequately protect the value of the physical collateral. In regard to the opportunity cost aspect of value, this Court con-

---

**3.** The Bankruptcy Court for the Southern District of Texas praised the *American Mariner* analysis of adequate protection as being "clearly correct", yet felt compelled to measure opportu-
nity cost by the reinvestment rate of return and not the contract rate of return. *Bear Creek Ministorage,* 49 B.R. at 457.

cludes that First Bank has failed to carry its burden of establishing the value of the additional interest they allege is in need of protection. First Bank has proven the initial element, that they have a security interest in all of the Debtors' machinery and equipment. However, First Bank presented insufficient evidence at the evidentiary hearing as to when they would have, but for the bankruptcy, reinvested the proceeds from a sale of the Debtors' machinery and equipment and the rate of return the proceeds would have earned. Instead, they presented evidence only as to the contractual interest rate on the Debtors' debt which, as previously stated, is not in every instance the de facto rate of return. Thus, the Court must find, consistent with the analysis herein, that First Bank has failed to establish a prima facie case under section 362(d) in showing lost "opportunity cost" consistent with *Martin* and *American Mariner*.

Accordingly, First Bank of North Dakota, on remand of this Court's Decision of September 7, 1984, and, on its renewed Motion for Relief From Stay, must fail in its request for adequate protection for its opportunity cost. To that extent, the Motions are DENIED. In all other respects, this Court's Decision of September 7, 1984, remains in effect.

IT IS SO ORDERED.