In re ORLANDO TROUT CREEK RANCH, Debtor.

Bankruptcy No. 586–05898–R.
R.S. No. 870526.

United States Bankruptcy Court, N.D. California.

Oct. 23, 1987.

Martin J. Tangeman, Sinsheimer, Schiebelhut & Baggett, San Luis Obispo, Cal. for San Luis Obispo Production Credit Assn.

Ed Murphy, Rosen, Wachtel & Gilbert, San Francisco, Cal. for Travelers Ins. Co.

Kenneth J. Campeau, Campeau & Grube, San Jose, Cal. debtor and debtor-in-possession.

MEMORANDUM OF DECISION ON MOTIONS FOR USE OF CASH COLLATERAL, RELIEF FROM AUTOMATIC STAY, AND LOST OPPORTUNITY PAYMENTS

ALAN JAROSLOVSKY, Bankruptcy Judge.

### FACTS

The debtor operates a large "cow-calf" cattle business. It filed its Chapter 11 petition on December 3, 1986. The principal creditor in the case is San Luis Obispo Production Credit Association ("PCA"), which was owed approximately $3.1 million on the petition date, secured by the debtor's cattle herd and other assets. It appears to be undisputed that in May, 1986, PCA demanded that the debtor either infuse new capital into its operation or liquidate the herd. In October, 1986, PCA filed suit to foreclose on its collateral; the debtor filed its Chapter 11 petition a few weeks later.

The debtor has made payments to PCA totalling $530,000.00 since the filing date, so that the balance owing to PCA, excluding interest and costs (which do not appear allowable as a secured claim under section 506(b) of the Bankruptcy Code) is presently about $2.6 million.

The debt to PCA is secured by two deeds of trust to real property and security interests in the debtor's farm equipment, crops, and cattle. After a hearing at which testimony was heard, the court determined the value of the deeds of trust, farm equipment and crops to be approximately $500,000.00 and the value of the herd to be about $2 million. Thus, PCA is an undersecured creditor.

One key fact which is undisputed is that the cattle market is rising and has been rising since the petition was filed. PCA's own expert testified that the cattle market had increased significantly between the time he prepared his appraisal and the time of the hearing a few weeks later. The debtor's expert testified that the market outlook is favorable to the debtor for the next three to five years.

During the first few months after the petition was filed, the parties operated under a stipulation allowing the debtor to use PCA's cash collateral. That agreement has expired, and PCA now seeks relief from the stay to enforce its security interests or, if that relief is not granted, for an order that the debtor make "lost opportunity" payments pursuant to *In re American Mariner Industries, Inc.* (9th Cir.1984) 734 F.2d 426. The debtor opposes these motions, and seeks leave to continue using PCA's cash collateral.

### RELIEF FROM AUTOMATIC STAY

The mere fact that PCA is undersecured does not mean that it is entitled to relief from the automatic stay. Pursuant to section 506(a), PCA has a secured claim for the value of its collateral and an unsecured claim for the balance. PCA is entitled to relief from the stay only if its secured claim is not adequately protected. PCA's secured claim may be deemed to be adequately protected where its security is not depreciating. 2 Bkr.L.Ed. sec. 15.12; *In re Pine Lake Village Apartment Co.*

(Bkrtcy.S.D.N.Y.1982) 19 B.R. 819. The only exceptions are where the debtor is not properly caring for the collateral or it cannot make court-ordered lost opportunity payments as discussed below.

 The undisputed testimony taken by the court established that the cattle market has risen substantially since this case was commenced, and continues to rise. Since the cattle herd represents eighty percent of the overall collateral, its increase more than offsets any depreciation of the equipment or other collateral. Where the value of collateral is increasing, the mere passage of time constitutes adequate protection. *Matter of Hollie* (Bkrtcy.M.D.Ga. 1984) 42 B.R. 111, 118, citing 2 Collier on Bankruptcy (15th ed.) section 361.01[1]. In *Hollie*, the court held that where a livestock herd is being well maintained and is increasing in value due to the birth of calves the secured creditor is adequately protected, notwithstanding being undersecured.

For the above reasons, PCA's motion for relief from the automatic stay must be denied. However, this denial is without prejudice to PCA's right to bring a further motion if the value of its collateral begins to decline significantly.

## USE OF CASH COLLATERAL

 The testimony taken by the court established that the debtor's business is the production of calves which are then sold to others who raise and market them. While there is some turnover of the breeding herd as older bulls and poor bearers are replaced, the overall size of the breeding herd is maintained and its value increases along with beef prices in general. The court will therefore order that the debtor is authorized to use PCA's cash collateral for its ordinary and necessary operating expenses so long as the overall value of the breeding herd is maintained. Again, this order will be made without prejudice to PCA's right to seek modification or termination if circumstances change. As a condition of the use of cash collateral, the debtor must of course maintain sufficient insurance and provide PCA with free access to any relevant information concerning its collateral.

## LOST OPPORTUNITY PAYMENTS

 PCA's motion for an order requiring the debtor to make lost opportunity payments raises some very interesting issues concerning how such payments are to be calculated. PCA argues that it is entitled to cash payments from the time it made its current motion for relief from the automatic stay, and that the amount of the payments should be calculated using the value of its collateral at that time, with no credit to the debtor for the post-petition increase in value. The debtor argues that PCA's right to such payments should be based on the value of the collateral at the time the bankruptcy petition was filed, and that it be given a credit for the increase in value since that time. The court finds that the law supports the debtor's position.

 In *American Mariner*, the Ninth Circuit held that an undersecured creditor is entitled to compensation for the delay in enforcing its rights during the interim between the *petition* and *confirmation of a plan.* 734 F.2d at 435. Thus, read literally, it supports the debtor's position and not PCA's. Even if this court were to interpret this language from *American Mariner* as only a general statement not applicable in every case, however, the facts in this case convince the court that the proper date for valuation is the date of the petition and not the date the motion for relief from the stay is brought. It appears undisputed that PCA demanded liquidation of the herd herd seven months before the petition was filed and that it commenced a foreclosure action under state law two months before the petition was filed. The Eighth Circuit has ruled in *In re Ahlers* (8th Cir.1986) 794 F.2d 388, 396, that the petition date should be used to calculate lost opportunity payments unless foreclosure proceedings had not commenced when the petition was filed. In this case, foreclosure action had been commenced and the proper date is therefore the petition date.[1]

---

**1.** The court notes that it is possible that fore-

closure could not have taken place exactly when

Having determined that the rights entitled to protection under *American Mariner* should be determined as of the petition date, the remaining issue is whether the debtor can be given credit for the substantial increase in the value of the collateral since then. Stated another way, the issue is whether a substantial postpetition increase in the value of collateral can be considered adequate protection for lost opportunity rights. The court finds that it can.

In *American Mariner*, the court noted that ordering monthly interest payments is but one method of providing adequate protection "but by no means the only method available to the debtor." 734 F.2d at 435. Since appreciating value is itself a form of adequate protection (see *Matter of Hollie*, discussed above), the court sees no reason why appreciation cannot satisfy the requirements of *American Mariner*. The court in *American Mariner* noted that the debtor should be given "maximum flexibility" in structuring adequate protection; subsequent cases have noted that *American Mariner* should not be interpreted in a way that overcompensates the creditor. *In re Bessey* (Bkrtcy.S.D.Cal.1986) 65 B.R. 638, 643.

In this case, PCA has benefitted greatly from the stay of its foreclosure by the debtor's bankruptcy proceedings. It would be overcompensation to ignore this benefit in computing any sort of adequate protection. The court therefore finds that PCA will not be entitled to lost opportunity payments until the current value of its collateral declines below its value on the petition date plus a reasonable return on that figure thereafter.

## CONCLUSION

A separate order shall be entered concurrently with this memorandum in accordance with Bankruptcy Rule 9021. The debtor shall not be restricted by any term or prior ruling not contained in this memorandum, but the order made is without prejudice to the right of PCA to seek such additional terms and modifications as may become necessary as market conditions change. Nothing in this memorandum shall be construed as a final determination of PCA's allowed claims.

---

the petition was filed, and PCA may therefore have an argument for a later date. However, no evidence was presented on this point and the burden of proof is on the party seeking lost opportunity payments. *In re Wolsky* (Bkrtcy.D. N.D.1985) 53 B.R. 751, 759. Also, the debtor should be entitled to a presumption that in the absence of a reorganization effort the foreclosure action would not have been defended.