**In re BIG3D, INC., Debtor.**

**People's Capital and Leasing Corp., Appellant,**

v.

**Big3D, Inc., Appellee.**

**BAP No. EC–09–1292–En Banc. Bankruptcy No. 08–16768.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued to the Panel en banc and Submitted on July 22, 2010, at Pasadena, California.

Decided Oct. 6, 2010.

---

Edmund J. Sherman, Glass and Goldberg, for People's Capital Leasing Corp.

Scott M. Reddie, McCormick Barstow Sheppard Wayte & Carruth, LLP, Fresno, CA, for Big3D, Inc.

Before: PAPPAS, Chief Judge, DUNN, JURY, MARKELL, HOLLOWELL, and KIRSCHER, Bankruptcy Judges.

## OPINION

DUNN, Bankruptcy Judge:

### INTRODUCTION

The chapter 11 [1] debtor in possession in this case is Big3D, Inc. ("Big3D"). Se-

1. Unless otherwise indicated, all chapter, sec- tion and rule references are to the Bankrupt-

cured creditor People's Capital and Leasing Corporation ("PCLC") appeals the bankruptcy court's decision that it was not entitled to adequate protection payments from Big3D to compensate it for the alleged decline in the value of its collateral occurring between the bankruptcy petition date and the date PCLC filed its request for adequate protection. We AFFIRM.

## FACTUAL BACKGROUND

Most of the material facts in this appeal are undisputed.

Big3D operates a commercial printing business, specializing in printing on plastic lenses to produce a three dimensional effect. PCLC is in the business of providing financing for the acquisition of business equipment.

On October 21, 2005, Big3D and PCLC entered into "Master Lease Agreement No. 1300" and related attachments (together, the "Lease Agreement"). Under the Lease Agreement, PCLC leased to Big3D a 2005 KBA Genius 52UV–5 Sheetfold offset press (the "Equipment"). The lease term was 60 months, and Big3D was required to pay PCLC monthly payments of $8,516.13. The Lease Agreement granted Big3D an option to purchase the Equipment at its expiration or termination for $101.00. PCLC filed a UCC–1 Financing Statement concerning the transaction and the Equipment.[2] The Lease Agreement was twice amended by the parties, on February 8 and November 27, 2007, to allow Big3D to make up payment shortfalls.

In March 2008, Big3D defaulted again on its payment obligations under the Lease Agreement. PCLC alleges that it made demand on Big3D to pay the missed payments under the Lease Agreement, but Big3D did not do so. PCLC declared the entire balance on the Lease Agreement, a total of $348,411.71, due and owing, and on July 28, 2008, PCLC sued Big3D in the Fresno County, California Superior Court for breach of contract and to recover possession of the Equipment from Big3D. *People's Capital & Leasing v. Big3D, Inc.*, No. 08CECG02553. On August 7, 2008, PCLC filed an application for writ of possession in the state court under Cal.Code Civ. Proc. § 512.020, and at a hearing on October 21, 2008, the superior court granted a prejudgment writ of possession in favor of PCLC for the Equipment.

Big3D filed a chapter 11 bankruptcy petition on October 23, 2008; it has operated its business as a debtor in possession continuously since that date. In its schedules, Big3D listed the value of the Equipment at $400,000, and listed an undisputed secured debt of $350,000 for the Equipment in favor of PCLC.

About six months later, on March 20, 2009, PCLC filed a motion for relief from the automatic stay, or in the alternative, for adequate protection, in Big3D's bankruptcy case. In the motion, PCLC alleged that Big3D was in default under the Lease Agreement, and that during the bankruptcy case, Big3D had made no payments to PCLC, although Big3D had maintained possession and use of the Equipment. PCLC calculated that the amount owed on the Lease Agreement on the petition date was $364,751.76, including default interest but not including attorney's fees. PCLC

---

[2] cy Code, 11 U.S.C. §§ 101–1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037. The Federal Rules of Civil Procedure are referred to as Civil Rules.

**2.** While characterized by the documents as a "lease," because of the nominal purchase op-

tion price, PCLC concedes that, for purposes of the bankruptcy case, PCLC could be treated by Big3D as a secured creditor rather than a lessor. Hr'g Tr. 4:17–24 (April 23, 2009). Big3D does not challenge this characterization.

alleged it lacked adequate protection of its interest in the Equipment, and sought stay relief to repossess the Equipment, or in the alternative, adequate protection payments.

In support of its motion, PCLC submitted the declaration of its expert witness, James R. White, who opined that the value of the Equipment had remained constant at $380,000 from July 2008 to the petition date of October 23, 2008, but, because of "deteriorating economic conditions," the Equipment's value had declined $45,000 between the petition date and the date of his report, March 11, 2009. According to White, although the rate of depreciation in value had slowed, the Equipment was still losing value at the rate of 12 percent a year, or $3,350 per month.

Big3D filed an opposition to PCLC's motion on April 9, 2009. Big3D did not contest the factual assertions of PCLC's motion and declaration. Rather, Big3D asserted that the Equipment was necessary for its reorganization, and it offered to pay PCLC $3,500 per month thereafter for adequate protection.

At the April 23, 2009 hearing on PCLC's motion, counsel for the parties and the bankruptcy court agreed that prospective adequate protection payments should be made by Big3D to PCLC in the amount of $3,500 per month beginning May 15, 2009. However, the bankruptcy court was skeptical about PCLC's request that it order Big3D to make adequate protection payments to PCLC as compensation for the Equipment's alleged loss in value from the petition date to the date that PCLC filed its motion. The court took that aspect of PCLC's request under submission and invited the parties to file supplemental briefs.

In its brief, PCLC cited the BAP's decision in *Paccom Leasing Corp. v. Deico Elects., Inc. (In re Deico Elects., Inc.)*, 139

B.R. 945 (9th Cir. BAP 1992) (*"Deico"*), for the proposition that adequate protection should be provided to a creditor based on when it could have obtained its state court remedies if bankruptcy had not intervened. According to PCLC, since it had obtained the state court writ of possession two days before the filing of Big3D's bankruptcy petition, it was entitled to adequate protection payments from the petition date.

Big3D's brief argued that PCLC was not entitled to "retroactive" adequate protection payments (i.e., for the period prior to filing its motion) because it was protected by a substantial equity cushion in the Equipment on the petition date. Moreover, it reminded the bankruptcy court that while PCLC had the writ of possession when Big3D filed for bankruptcy, PCLC had not completed its state law remedies by repossessing and selling the Equipment. As a result, Big3D argued that it need only make prospective adequate protection payments to PCLC.

The bankruptcy court entered its Memorandum of Decision Regarding Motion for Retroactive Adequate Protection ("Memorandum Decision") on August 28, 2009. In its Memorandum Decision, the bankruptcy court determined that, as the creditor, PCLC had the burden of proving entitlement to retroactive adequate protection. It also rejected PCLC's contention that *Deico* required that adequate protection be provided from the petition date. Instead, according to the bankruptcy court, *Deico* granted the bankruptcy court "discretion to fix any initial lump sum amount, the amount payable periodically, the frequency of payments, and the beginning date, all as dictated by the *circumstances of the case* and the sound exercise of that discretion." Memorandum Decision at 7, *citing Deico*, 139 B.R. at 947 (emphasis in original). Because in this case PCLC acknowledged

that the Equipment had depreciated only because of adverse economic conditions, and not because of wear and tear or by Big3D's continued possession and use, the bankruptcy court was not persuaded that PCLC had been harmed as a result of the automatic stay prior to the hearing. The bankruptcy court also expressed concern that PCLC had not filed its request for adequate protection within a reasonable time. For these reasons, the bankruptcy court declined to order that PCLC be paid any adequate protection for the period prior to commencement of the prospective payments.

The bankruptcy court entered an Order Denying Motion for Retroactive Adequate Protection on August 28, 2009. PCLC filed a timely notice of appeal on September 4, 2009.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (M). The Panel has jurisdiction under 28 U.S.C. § 158.

## EN BANC CONSIDERATION

On May 10, 2010, after a vote of the members of the Panel, an order was entered directing that this appeal be argued and submitted for decision en banc pursuant to 9th Cir. BAP R. 8012–2. BAP R. 8012–2(a) provides that although en banc consideration of an appeal by the Panel generally is not favored, an en banc hearing will be ordered in order to maintain uniformity of the Panel's decisions "including, without limitation, when there is a challenge to an existing precedent of the Panel."

In light of Big3D's argument based on language of the Bankruptcy Code, primarily in §§ 362(d) and 363(e), that *as a matter of law,* adequate protection payments cannot be required for any period prior to a creditor's filing a request or motion for adequate protection payments, the merits panel requested that the Panel hear and decide this appeal en banc, to consider the continuing viability of *Deico* as precedent, as provided for in BAP R. 8012–2(c). Thereafter, en banc consideration was approved by a vote of a majority of the regular members of the Panel, as provided for in BAP R. 8012–2(d).[3]

## ISSUES

1. Whether the bankruptcy court abused its discretion in denying PCLC's request for adequate protection for the period from the petition date to the date of filing its motion for adequate protection.

2. Whether the Panel should modify the rule announced in its decision in *Deico,* by ruling that a creditor is entitled to adequate protection only for the depreciation of its collateral going forward from the date it files its request or motion with the bankruptcy court.

## STANDARDS OF REVIEW

 A bankruptcy court's decision regarding adequate protection is reviewed for abuse of discretion. *Deico,* 139 B.R. at 947. In applying an abuse of discretion test, we first "determine de novo whether the [bankruptcy] court identified the correct legal rule to apply to the relief requested." *United States v. Hinkson,* 585 F.3d 1247, 1262 (9th Cir.2009). If the bankruptcy court identified the correct legal rule, we then determine whether its "application of the correct legal standard

---

**3.** Since this appeal arose in the Eastern District of California, which is not the home district of any regular member of the Panel, all six regular members of the Panel were eligible to vote on the request for en banc consideration.

[to the facts] was (1) illogical, (2)implausible, or (3) without support in inferences that may be drawn from the facts in the record." *Id.* (internal quotation marks omitted). Only if the bankruptcy court did not identify the correct legal rule, or if its application of the correct legal standard to the facts was illogical, implausible, or without support in inferences that may be drawn from facts in the record, is it appropriate to conclude that the bankruptcy court abused its discretion. *Id.*

## DISCUSSION

### I.

Big3D did not contest that PCLC was entitled to adequate protection payments to protect its interest in the Equipment. This appeal concerns the parties' dispute over the timing of adequate protection payments. The parties stipulated, and the bankruptcy court ordered, that Big3D make monthly adequate protection payments to PCLC of $3,500 from and after May 23, 2009. However, the bankruptcy court denied PCLC's request that a further adequate protection payment be made to compensate PCLC for any decline in value of the Equipment from the petition date on October 23, 2008. The bankruptcy court's denial of this part of PCLC's request for adequate protection is the focus of this appeal.

■ The Panel may affirm the decision of the bankruptcy court under the rule announced in *Deico*, because the bankruptcy court did not abuse its discretion in denying retroactive adequate protection payments in this case.

### A.

The Bankruptcy Code provisions concerning stay relief and adequate protection are straightforward. During the pendency of a bankruptcy case, the automatic stay under § 362(a) prevents secured creditors from exercising their usual state law contractual and statutory remedies upon a debtor's default, including the right to repossess and sell personal property collateral securing a debt. Congress offers a secured creditor two alternatives in the Bankruptcy Code when it perceives that its collateral may be declining in value during a bankruptcy case: it may seek relief from the automatic stay under § 362(d), or it may seek adequate protection under § 363(e).

Under § 362(d)(2), stay relief is available to a secured creditor if the debtor lacks equity in the collateral, but only if it is also shown that the collateral is not "necessary to an effective reorganization." However, pursuant to § 362(d)(1), relief from stay is also available to the secured creditor if it lacks adequate protection of its interest in the collateral. Adequate protection is in turn defined in § 361,[4] and

4. § 361. **Adequate protection**
When adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by—
(1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property;

(2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; or
(3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

is intended to compensate a secured creditor whose collateral declines in value while it is in the possession of, and being used by, a chapter 11 debtor.

Section 363 lays down the ground rules for a debtor's use of property in a chapter 11 bankruptcy case. In general, under § 363(c)(1), a chapter 11 debtor in possession may use property of a bankruptcy estate in which a creditor holds a lien in the ordinary course of the debtor's business without notice to, or obtaining the consent of, the creditor.[5] But while a debtor in possession may use property subject to a creditor's lien, § 363(e) conditions that right. It provides:

> Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the [debtor in possession], the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest.

As noted previously, § 361(1) instructs that when adequate protection is shown to be required to stave off a secured creditor's request for stay relief:

such adequate protection may be provided by . . . requiring the [debtor in possession] to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property[.]

In this case, while not contesting that the Equipment was necessary for Big3D's reorganization, PCLC through its motion sought both stay relief and adequate protection. The parties stipulated that cash adequate protection payments by Big3D to PCLC, rather than stay relief, were the appropriate means of safeguarding the value of PCLC's interest in the Equipment while Big3D was attempting to reorganize. The parties could not agree, however, on the period of time during the bankruptcy case for which PCLC was entitled to adequate protection.[6] In their briefs in the bankruptcy court, and now on appeal, both parties suggest that the answer to this question is controlled by the Panel's opinion in *Deico*.

*Deico* was a manufacturer of computer components that filed for protection under chapter 11. Paccom Leasing Corporation

---

5. This provision is to be contrasted with § 363(c)(2) which prohibits the use of a creditor's "cash collateral," as defined in § 363(a), without the creditor's consent, or authorization by the bankruptcy court obtained only after notice and a hearing.

6. As noted above, the bankruptcy court ruled that PCLC had the burden of proving it was entitled to retroactive adequate protection payments. At first glance, this aspect of the bankruptcy court's decision would seem to conflict with the statutory allocation of burdens under § 363(p), which dictates that while a secured creditor must prove the extent, validity and priority of its lien in the debtor's property, "[i]n any hearing under this section . . . the [chapter 11 debtor] has

the burden of proof on the issue of adequate protection." § 363(p)(1). However, because the parties have stipulated that adequate protection must be paid by Big3D to PCLC, and no dispute exists over PCLC's interest in the collateral, the question of the timing of those adequate protection payments arguably falls outside the parameters of § 363(p), and the general rule that, as the movant, PCLC has the burden of persuasion on its motion, controls. *Hickman v. Hana (In re Hickman)*, 384 B.R. 832, 841 (9th Cir. BAP 2008). PCLC has not challenged the bankruptcy court's ruling that it must prove that it is entitled to retroactive adequate protection. We therefore express no opinion on the bankruptcy court's allocation of that burden.

("Paccom") had leased equipment to Deico that Deico needed for its reorganization. Concerned about the possibly declining value of its collateral, Paccom filed two motions—a motion for relief from the automatic stay and a motion for adequate protection—in the bankruptcy court. In its motion for adequate protection, Paccom argued that it was entitled to adequate protection payments from Deico from and after one of three dates: the petition date, the date Paccom filed its motion for relief from stay, or the date Paccom filed its motion for adequate protection. Paccom's motion for adequate protection was heard on August 22, 1991, and the bankruptcy court ordered that adequate protection payments be made by Deico to Paccom commencing on September 22, 1991. Paccom appealed the bankruptcy court's selection of the payment commencement date to the BAP. *Deico,* 139 B.R. at 946.

In *Deico,* the BAP observed that the Bankruptcy Code does not specifically provide for a date upon which adequate protection payments should commence. Based on case law, including the teachings of the Supreme Court in *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest,* 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988), the Panel reasoned that an important factor in determining the timing and scheduling of adequate protection payments should be how much the collateral had declined in value in the period after the secured creditor would have exercised its remedies under state law absent a bankruptcy filing. *Deico,* 139 B.R. at 947.

However, *Deico* ultimately concluded that: (1) adequate protection payments from a chapter 11 debtor to a secured creditor are intended to compensate a secured creditor only for those losses occasioned by the debtor's bankruptcy; (2) adequate protection is payable for only that period of time *after* the creditor would

have exercised its state court remedies; and (3) the bankruptcy court has broad discretion in fixing the beginning date, the amount, and the frequency of adequate protection payments. *Id.*

**B.**

The cornerstone of PCLC's argument is that, in determining whether it was entitled to "retroactive" adequate protection, the bankruptcy court "should have focused on the date Appellant had obtained its state court remedy to recover the Equipment Collateral." PCLC's Opening Br. at 14. According to PCLC, since in this case it already had obtained its state court remedy, i.e., the writ of possession, by the time the bankruptcy petition was filed, the petition date was the baseline for measuring the decline in the value of its collateral, and the bankruptcy court "should have awarded adequate protection payments for the loss of value of the Equipment Collateral after that date." *Id.*

■ We disagree with PCLC's interpretation of the Bankruptcy Code, and its reading of the holding in *Deico.* Instead, in our view, as the *Deico* decision states, "the amount of adequate protection to which an undersecured creditor is entitled is equal to the amount of depreciation its collateral suffers after it would have exercised its state court remedies. . . ." *Deico,* 139 B.R. at 947. Indeed, *Deico* left no ambiguity on this point, because later in the opinion the Panel concluded that "[a]dequate protection payments compensate undersecured creditors for the delay bankruptcy imposes upon the *exercise* of their state law remedies." *Id.* (emphasis added).

While PCLC had obtained a state court order directing the sheriff to take possession of the Equipment on PCLC's behalf, PCLC would not have fully "exercised" its remedies under its contract and applicable state law until the Equipment was actually

repossessed and sold. It is only at that point that the value of the Equipment would have been converted to cash, and PCLC's security would be immune from any future decline in value. But even assuming the best possible circumstances, and the efficient execution of the repossession and sale of the Equipment, it likely would have taken PCLC substantial time to have removed and sold the Equipment following the state court's issuance of a writ of possession.

For example, even if the sheriff had acted to enforce the writ on the same day Big3D filed its bankruptcy petition,[7] it is likely that the disassembly and removal of the Equipment would have taken some time to accomplish. In this regard, the bankruptcy court observed that PCLC had not addressed the problems of the writ enforcement and repossession process as to the Equipment in its arguments. The bankruptcy court noted that the Equipment was a large piece of specialized machinery, not easily movable, and that the physical removal of the Equipment would require a team of technicians at least several days. The Equipment would need to be dismantled and transported in pieces to another location. PCLC has not challenged these findings on appeal.

After the sheriff took possession of the Equipment, additional proceedings would have been required before PCLC would have completed the exercise of its state law remedies. To liquidate the Equip-ment, whether by execution sale after entry of a final judgment by the state court, Cal.Code Civ. Proc. § 716.010 *et seq.*, or via private sale under Cal. U. Com.Code § 9610(a),[8] further time would be required. Therefore, the bankruptcy court did not err in concluding that PCLC had not completed the exercise of its state law remedies on the petition date, and that additional time would have been required to repossess and sell the Equipment.

In addition to this problem with its argument, PCLC's evidence concerning the decline in the value of the Equipment was also of limited value to the bankruptcy court in determining whether retroactive adequate protection was appropriate. According to PCLC's expert witness, "the $380,000 valuation of the Equipment was … accurate as of the filing date of the instant Bankruptcy case on October 23, 2008." The witness valued the Equipment at $335,000 on the date of his report, March 11, 2009, explaining that this $45,000 in depreciation was due to "deteriorating economic circumstances." During this period of approximately four and a half months, the expert concluded that the Equipment depreciated at a variable rate, which rate slowed to 12% per annum by the time he completed his report. It is impossible to understand from the expert's declaration when, and how much, the Equipment depreciated from the theoretical point when PCLC would have complet-

7. To enforce the writ under California law, the sheriff would have been required to maintain possession of the Equipment in a secure location. Cal.Code. Civ. Proc. § 514.030. No earlier than ten days after levy of the writ, the sheriff could deliver the Equipment to PCLC. *Id.* However, the California Code would allow Big3D to provide an undertaking equal to twice the value of its interest in the collateral, preventing delivery of the collateral to PCLC, and requiring return of the Equipment to Big3D. Cal.Code Civ. Proc. § 515.020. If PCLC objected to Big3D's undertaking within ten days, a contested hearing would follow in state court, which would require at least another 10 days' notice to the parties. *Id.*

8. After default, a secured party may sell, lease, license, or otherwise dispose of any or all of the collateral in its present condition or following any commercially reasonable preparation or processing. Cal. Com.Code § 9610(a).

ed the exercise of its state law remedies in reference to the date that PCLC sought adequate protection.

■ To be entitled to adequate protection, *Deico* requires that PCLC establish both a temporal point at which it would have "exercised" its state law remedies outside of bankruptcy, and the amount the Equipment declined in value after that time. Even assuming that PCLC had exercised its state law remedies by the petition date, according to its expert, it was at some point after that date that the Equipment first started to depreciate, and once that depreciation commenced, it continued at a variable rate, culminating in a constant rate of depreciation of 12 percent per annum approximately four and a half months after Big3D's bankruptcy petition was filed. Nothing in this evidence would allow the bankruptcy court to establish, or even estimate, the temporal point at which the Equipment started to depreciate.

■ Based upon this record, the bankruptcy court observed, "it appears that [PCLC] was adequately protected for some period of time and that the date of filing is not the date from which adequate protection should be calculated."[9] Under *Deico*, the bankruptcy court had discretion in fixing the beginning date, amount and frequency of the adequate protection payments based on the circumstances of the case. *Deico*, 139 B.R. at 947. Here, the

bankruptcy court's findings and conclusions are consistent with *Deico*, and they are neither illogical, implausible, nor without support in inferences that may be drawn from facts in the record. *Hinkson*, 585 F.3d at 1262.[10]

In addition, the bankruptcy court read § 361(1) generally to require that an award of adequate protection payments be measured by that amount that the automatic stay, coupled with the debtor's use of the collateral, "results in a decrease in the value" of the collateral. The bankruptcy court noted that, in this case, PCLC never argued that the Equipment depreciated as a result of Big3D's use of the Equipment. Instead, the bankruptcy court observed that PCLC's basis for seeking adequate protection was a decline in value of the Equipment caused by "deteriorating economic conditions." Such conditions occurred regardless of Big3D's seeking to reorganize its affairs in bankruptcy.

In sum, the bankruptcy court's determination that PCLC did not show that it suffered a compensable loss to support an award of retroactive adequate protection as a result of the automatic stay in Big3D's bankruptcy case was not an abuse of discretion.

## C.

■ The bankruptcy court also focused its attention on PCLC's decision not to

---

9. Indeed, PCLC's counsel explained its delay in seeking adequate protection in part by indicating that PCLC did not believe it lacked adequate protection at the time of Big3D's bankruptcy filing.

10. Besides *Deico*, PCLC relies on the Panel's decision in *First Fed. Bank of Cal. v. Weinstein (In re Weinstein)*, 227 B.R. 284 (9th Cir. BAP 1998). PCLC asserts that *"Weinstein* contains a very strong statement that the adequate protection must be paid from the Petition Date." PCLC Open. Br. at 20. However, and more precisely, the decision reads, "Adequate protection is provided to safeguard the

creditor against depreciation in the value of the collateral during the reorganization process." *In re Weinstein*, 227 B.R. at 296. *Weinstein* does not require that adequate protection commence upon the filing of the petition. Moreover, the authority cited in *Weinstein* for the quoted statement is *Deico*, which, as discussed above, also does not require that adequate protection payments begin effectively as of the petition date. In both cases, the panels rejected the creditors' requests for adequate protection from the petition date. *In re Weinstein*, 227 B.R. at 296; *Deico*, 139 B.R. at 947.

seek stay relief or adequate protection until six months after the commencement of Big3D's bankruptcy case. At the hearing on April 23, 2009, the bankruptcy court questioned counsel for PCLC as to why it had delayed in filing its motion and why, if redressing the alleged harm to PCLC was as urgent as its counsel suggested, PCLC did not act sooner by requesting an expedited hearing. The explanation offered by PCLC's counsel—that PCLC was initially oversecured and that PCLC had diligently attempted to negotiate a settlement with Big3D—did not impress the court, which noted that PCLC's counsel had apparently not even started to prepare the motion until four months after the petition date, and then did not seek a hearing date for an additional two months.

■ A court may raise, *sua sponte,* concerns over delays in the filing of motions at any stage of proceedings. *See Great Falls v. U.S. Dep't of Labor,* 673 F.2d 1065, 1069 (9th Cir.1982). Indeed, our court of appeals teaches that in equitable proceedings, a party that sits on its rights is disfavored. *Esta Later Charters, Inc. v. Ignacio,* 875 F.2d 234, 239 n. 11 (9th Cir. 1989) ("The principle which underlies all equity rulings is embodied in the maxim *vigilantibus non dormientibus aequitas subvenit,* that is, equity aids the vigilant, not those who slumber on their rights.").

■ In *Deico,* the Panel noted that a bankruptcy court's order that a debtor pay a "lump sum of past due adequate protection could suffocate a debtor otherwise able to reorganize." 139 B.R. at 947. The bankruptcy court's concerns about PCLC's perceived delays in pursuing relief in this case are justified in this context. Even beyond the facts of this case, it is well established that delays in filing a motion for adequate protection should not unfairly treat the debtor. *In re Best Prods. Co., Inc.,* 138 B.R. 155

(Bankr.S.D.N.Y.1992)(cautioning against the danger of creditors waiting until late in the reorganization process to seek adequate protection payments and thereby attempting to control the plan confirmation process), *aff'd,* 149 B.R. 346 (S.D.N.Y. 1992); *Greives v. Bank of W. Ind. (In re Greives),* 81 B.R. 912, 965 (Bankr.N.D.Ind. 1987) ("there is imposed on a secured creditor the obligation to be diligent in pursuing adequate protection"); *In re Hinckley,* 40 B.R. 679, 681 (Bankr.D.Utah 1984) (creditors should be encouraged to pursue their available remedies quickly and not to sit on their rights while the collateral diminishes in value); *In re Adams,* 2 B.R. 313, 314 (Bankr.M.D.Fla.1980) (secured creditor "should not be allowed to sit back and through his inaction compel the unsecured creditors to become insurers of any deficiency that may arise"). Indeed, *Deico* cites a decision relied upon by PCLC, *Travelers Life & Annuity Co. v. Ritz–Carlton of D.C., Inc. (In re Ritz–Carlton of D.C., Inc.),* 98 B.R. 170 (S.D.N.Y.1989). Although *Ritz–Carlton* held that adequate protection should be awarded from the petition date under the facts of that case, it also cautioned against allowing delays by creditors in filing motions for adequate protection that would be unfair to the debtor. *Id.* at 173.

In denying PCLC's request for retroactive adequate protection, the bankruptcy court did not abuse its discretion in considering PCLC's delay in filing its motion.

### D.

*Deico* grants broad discretion to bankruptcy courts in designing appropriate adequate protection awards for secured creditors. As explained above, that discretion extends to the bankruptcy court's decision as to when the adequate protection payments should commence. In this case, the bankruptcy court decided that PCLC had

not fully exercised its state law remedies. when Big3D filed its bankruptcy petition. It also determined that PCLC did not show when its collateral had declined in value between the petition date and the date it filed its stay relief/adequate protection motion. In addition, the court was justifiably skeptical whether any decline in the value of the Equipment was occasioned by Big3D's use of it, or whether the depreciation was solely because of deteriorating economic conditions. Finally, the bankruptcy court questioned PCLC's delay in requesting adequate protection.

The bankruptcy court properly applied the Bankruptcy Code and *Deico's* holding in reaching these conclusions. Its decision is supported by the record. Simply put, the bankruptcy court did not abuse its discretion by refusing to grant PCLC retroactive adequate protection.

## II.

■■■ A fundamental principle of our rule of law is that no judicial system could do society's work if it eyed each issue afresh in every case that raised it. *See* Benjamin Cardozo, *The Nature of the Judicial Process* 149 (1921). "The doctrine of stare decisis is of fundamental importance to the rule of law.... [It] promotes stability, predictability, and respect for judicial authority." *Hilton v. S.C. Pub. R.R. Comm'n,* 502 U.S. 197, 200, 112 S.Ct. 560, 116 L.Ed.2d 560 (1991) (internal citations omitted). We therefore should not disturb precedent absent "special justification." *Arizona v. Rumsey,* 467 U.S. 203, 212, 104 S.Ct. 2305, 81 L.Ed.2d 164 (1984); *see also Hilton,* 502 U.S. at 202, 112 S.Ct. 560 (stating that "we will not depart from the doctrine of stare decisis without some compelling justification").

The Ninth Circuit's Bankruptcy Appellate Panel, the longest functioning in the country, was established in 1979. Embracing the values expressed above, and to implement the goals of Congress in establishing bankruptcy appellate panels, this Panel has long regarded the precedents established in its prior published opinions as binding on the Panel absent changes in the Bankruptcy Code or controlling decisions by the Ninth Circuit Court of Appeals or United States Supreme Court. *Aheong v. Mellon Mortg. Co. (In re Aheong),* 276 B.R. 233, 249 (9th Cir. BAP 2002); *Palm v. Klapperman (In re Cady),* 266 B.R. 172, 181 n. 8 (9th Cir. BAP 2001), *aff'd,* 315 F.3d 1121 (9th Cir.2003); *State v. Rowley (In re Rowley),* 208 B.R. 942, 944 (9th Cir. BAP 1997); *Ball v. PaycoGen'l Am. Credits (In re Ball),* 185 B.R. 595, 597 (9th Cir. BAP 1995). *See also* 9th Cir. BAP R. 8013–1(c)(1) (providing that BAP opinions shall bind the Panel as precedent).

■■■ However, the rule of stare decisis "is not an inexorable command." *Planned Parenthood v. Casey,* 505 U.S. 833, 854, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992). Courts may, and frequently do, revisit earlier holdings for "prudential and pragmatic considerations designed to test the consistency of overruling a prior decision with the ideal of the rule of law, and to gauge the respective costs of reaffirming and overruling a prior case." *Id.* The Supreme Court explained the guidelines it applies when deciding to reaffirm or overrule its prior decisions:

[W]e may ask whether the rule has proven to be intolerable simply in defying practical workability; whether the rule is subject to a kind of reliance that would lend a special hardship to the consequences of overruling and add inequity to the cost of repudiation; whether related principles of law have so far developed as to have left the old rule no more than a remnant of abandoned doctrine; or whether facts have so changed,

or come to be seen so differently, as to have robbed the old rule of significant application or justification.

*Id.* at 854–55, 112 S.Ct. 2791 (citations omitted). Although the Supreme Court did not mandate that other federal courts apply these four guidelines, the Ninth Circuit has utilized them in reviewing its precedents. *Rand v. Rowland,* 154 F.3d 952, 955 (9th Cir.1998) (applying the principles of *Casey* to its review of its precedent on fair notice requirements).[11] We, too, accept them as useful guidelines in reviewing our precedents.

In this appeal, as an alternative to affirming the bankruptcy court's decision as within its discretion under *Deico,* Big3D has argued that the Panel may affirm by adopting a new rule: that adequate protection payments may not be awarded to a secured creditor for any period prior to its request. Big3D's Br. at 7–13. In examining the continuing vitality of *Deico,* the Panel may, as suggested by the Supreme Court, consider the workability of that precedent; whether other courts have relied upon *Deico* to an extent that a change might be inequitable; or whether developments in the law justify abandoning the precedent.[12] In considering these criteria in the present case, in our view, the general principles applied in *Deico* remain viable, for the following reasons.

### A.

As noted above, a threshold requirement for granting relief from stay for lack of adequate protection under § 362(d)(1), and for conditioning use, sale or lease of property by requiring adequate protection under § 363(e), is a "request" of a party in interest or an entity with an interest in the subject property. A review of the history of case law concerning timing of adequate protection payments reflects an evolution from an early focus on the petition date to a greater emphasis in recent authorities on the date of the request or even the date of the court's consideration of the request.

Among the early decisions is *Crocker Nat'l Bank v. Am. Mariner Indus., Inc. (In re Am. Mariner Indus., Inc.),* 734 F.2d 426 (9th Cir.1984), *overruled in part, Timbers,* 484 U.S. at 368, 108 S.Ct. 626. *Am. Mariner* held that an undersecured creditor was entitled to compensation for the delay in enforcing its rights and "benefit of its bargain" between the filing of the petition and the confirmation of a reorganization plan. *Id.* at 435. Although *Am. Mariner* never explicitly stated that adequate protection payments should commence as of the petition date, courts relying on *Am. Mariner* generally adopted the petition date as the starting point for adequate protection. *See, e.g., In re Orlando Trout Creek Ranch,* 80 B.R. 190, 192 (Bankr. N.D.Cal.1987); *In re Deeter,* 53 B.R. 623, 628 (Bankr.N.D.Ind.1985); *Republic Bank Houston v. Bear Creek Ministorage (In re Bear Creek Ministorage, Inc.),* 49 B.R. 454

---

**11.** In his concurrence to the Ninth Circuit case *United States v. Aguon,* 851 F.2d 1158, 1175 (9th Cir.1988), Judge Reinhardt observed a difference between review of precedent at the circuit and Supreme Court levels. The Supreme Court is free at any time to change its precedents. Only an en banc panel may change precedent in the Ninth Circuit. Therefore, review of precedent at the circuit level is a two-level process. First, the court [or panel] must vote to consider the appeal en banc. Then, the en banc panel is allowed to review the precedent. Our procedure in this appeal involved both levels of review and is therefore consistent with our court of appeals' instructions.

**12.** As to the fourth criterion identified by the Supreme Court in *Casey,* we believe the facts underlying the 1992 *Deico* case have no particular relevance to the present case.

228

(Bankr.S.D.Tex.1985).[13]

The greater focus on the date of the request appears to begin with *Ahlers v. Norwest Bank Worthington (In re Ahlers)*, 794 F.2d 388 (8th Cir.1986), *rev'd on other grounds*, 485 U.S. 197, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988). In *Ahlers*, the creditor bank held a security interest in the debtor's farm machinery and equipment. When the debtor defaulted on the secured loan, the bank initiated an action to repossess the equipment. The debtor filed a chapter 11 petition. The bank filed a motion for relief from stay and/or adequate protection. The district court held that the bank was entitled to adequate protection from the date it filed its request for relief from stay.

As the bankruptcy court observed in this appeal, in reversing the district court, the Eighth Circuit opinion in *Ahlers* "unequivocally holds that the motion [for relief from stay/adequate protection] is the relevant date [for beginning adequate protection payments]." Memorandum Decision, at 12. The court of appeals explained:

[T]he starting date should not be when the petition is filed, but rather when the secured creditor seeks either possession of the collateral or adequate protection. Moreover, this ruling will prevent a hardship to the debtor caused by an adequate protection motion filed well after the bankruptcy petition has been filed, which could require sizeable "makeup" payments. It is not unreasonable to require the creditor to be vigilant in requesting protection if it wants this protection.

*Ahlers*, 794 F.2d at 395 n. 6.[14]

A significant majority of later decisions follow *Ahlers'* lead in setting the point for commencement of adequate protection payments at the filing of the motion for relief from stay or adequate protection. *See, e.g., In re Metromedia Fiber Network, Inc.*, 290 B.R. 487 (Bankr.S.D.N.Y.2003); *In re Farmer*, 257 B.R. 556, 561 (Bankr. D.Mont.2000); *Agency Servs. v. Keck*, 1999 WL 199595 *2, 1999 U.S. Dist. LEXIS 5056 *5 (N.D.Ill.1999); *In re Best Prods. Co., Inc.*, 138 B.R. 155 (Bankr.S.D.N.Y. 1992), *aff'd* 149 B.R. 346 (S.D.N.Y.1992);

**13.** Interestingly, one early case held that *Am. Mariner* supported the date of filing a motion for relief from stay as the beginning point for adequate protection payments. *Grundy Nat'l Bank v. Tandem Mining Corp.*, 754 F.2d 1436, 1440–41 (4th Cir.1985). However, a commentator and several courts have suggested that the Fourth Circuit misread the word "petition" in *Am. Mariner* to refer to a petition for relief from stay, rather than a bankruptcy petition. Susan C. Stevenson, *The Timing of Adequate Protection Payments*, 22 Cal. Bankr.J. 237, 240 (1995); *In re Bear Creek Ministorage, Inc.*, 49 B.R. at 458; *In re Deeter*, 53 B.R. at 628.

**14.** Although the Panel's decision in *Deico* did not cite to *Ahlers*, it appears that the Panel borrowed several concepts from the Eighth Circuit decision: (1) as a precursor to the *Deico* position that the court "first determine when the creditor would have obtained its state law remedies had bankruptcy not intervened," *Deico*, 139 B.R. at 947, *Ahlers* held "in fashioning adequate protection payments, the bankruptcy court must determine the date when the creditor, absent the filing of a bankruptcy petition, could have taken possession of the collateral under state law and could have sold it to a third party, the amount that the creditor would have realized at this sale, and the creditor's expected return upon reinvestment." *Ahlers*, 794 F.2d at 395. (2) Where *Deico* was concerned that "requiring a lump sum of past due protection could suffocate a debtor otherwise able to reorganize," *Deico*, 139 B.R. at 947, *Ahlers* noted that "this ruling will prevent a hardship to the debtor caused by an adequate protection motion filed well after the bankruptcy petition has been filed, which could require sizeable 'makeup' payments. It is not unreasonable to require the creditor to be vigilant in requesting protection if it wants this protection." *Ahlers*, 794 F.2d at 396 n. 6.

*In re Waverly Textile Processing, Inc.,* 214 B.R. 476 (Bankr.E.D.Va.1997); *In re Walter,* 199 B.R. 390 (Bankr.C.D.Ill.1996); *In re Cason,* 190 B.R. 917 (Bankr.N.D.Ala. 1995); *In re Dynaco Corp.,* 162 B.R. 389 (Bankr.D.N.H.1993); *In re Barrett,* 149 B.R. 494 (Bankr.M.D.Ohio 1993); *In re Continental Airlines, Inc.,* 146 B.R. 536 (Bankr.D.Del.1992).

 We do not quarrel with the trend of these decisions, and we note that they are no more than consistent with the Bankruptcy Code in determining that adequate protection for depreciation in the value of all forms of collateral, other than cash collateral, can be awarded only following an appropriate request or motion. However, we emphasize that because the filing of a request or motion is required as a matter of timing to determine when adequate protection may be awarded does not define what "adequate protection" is.

In terms of the structure of the Bankruptcy Code, while a request is a prerequisite to determining if adequate protection should be awarded under §§ 362(d)(1) and 363(e), what constitutes adequate protection is defined in § 361. If Congress intended a temporal limitation on adequate protection that would preclude any award of adequate protection for depreciation in the value of collateral prior to the filing of a request by the concerned creditor as a matter of law, logically, that limitation should have been included in § 361. In addition, the phrase "on request of" an entity or party in interest does not clearly state a limit on the varieties of adequate protection that can be awarded in appropriate circumstances. If Congress meant for the filing of a request or motion for adequate protection to function as a substantive limitation on what adequate protection can be awarded, it could and, as we see it, would have used clearer language to state that purpose. We conclude that the

*Deico* Panel was fundamentally right when it determined that,

> [W]hile the amount of adequate protection to which an undersecured creditor is entitled is equal to the amount of depreciation its collateral suffers after it would have exercised its state law remedies, neither that determination nor the schedule for its tender are appropriate for application of *a rigid formula. Instead, the bankruptcy court must have discretion to fix any initial lump sum amount, the amount payable periodically, the frequency of payments, and the beginning date, all as dictated by the circumstances of the case and the sound exercise of that discretion.*

*Deico,* 139 B.R. at 947 (emphasis added).

**B.**

The discussion in *Deico* states that "adequate protection analysis required the bankruptcy court to first determine when the creditor would have obtained its state law remedies had bankruptcy not intervened." 139 B.R. at 947. Indeed, four bankruptcy courts have cited *Deico* for the proposition that the bankruptcy court must first determine when the secured creditor would have obtained its state law remedies absent bankruptcy protection in determining whether requiring adequate protection payments is appropriate. *See First Commonwealth Bank v. Onasni Prop. Group, LLC (In re Onasni Prop. Group, LLC),* 425 B.R. 237, 241 n. 9 (Bankr.W.D.Pa.2010); *In re Dulgerian,* 2008 WL 220523, at *5 (Bankr.E.D.Pa. 2008); *In re Dupell,* 235 B.R. 783 (Bankr. E.D.Pa.1999); and In re *Continental Airlines,* 146 B.R. 536 (Bankr.D.Del.1992).

In this appeal, PCLC argues that it had obtained its relief under state law, i.e., the state court writ of possession, prior to Big3D's bankruptcy filing, and accordingly, adequate protection should be awarded

from the petition date. In contrast, Big3D attempts to focus the Panel on the following observation from *Deico:* "Presumably, [the point when the creditor would have obtained its state law remedies absent bankruptcy] will be after the creditor first seeks relief." Big3D's Br. at 14, *citing Deico*, 139 B.R. at 947. Big3D insists that this statement in the *Deico* opinion provides a basis to sustain its argument that adequate protection may only be awarded to a secured creditor from and after the time the motion for adequate protection is filed.

The bankruptcy court came to its own conclusions. In light of its allocation of the burden of proof, the bankruptcy court did not address Big3D's argument that the timing of the request fixes the point in time from which adequate protection can and must be measured. It disagreed with PCLC because it did not have an adequate record to determine "the initial but unanswered question" as to when PCLC could "have actually liquidated the Printing Press in the state court proceeding." Memorandum Decision, at 8. As noted above, that question is complicated, and we agree with the bankruptcy court that it was not adequately answered by the evidence presented by PCLC.

The question then becomes, because the issue as to when PCLC could have exercised its state law remedies to realize upon the Equipment in the absence of Big3D's bankruptcy filing is complex, are *Deico's* standards for determining appropriate adequate protection fundamentally unworkable? Our answer is no.

First the bankruptcy court in this case made an appropriate decision and did not abuse its discretion considering the record before it in light of *Deico*.

But more importantly, the bankruptcy court's decision was appropriate in light of the recognition by *Deico* generally of the

bankruptcy court's "discretion to fix any initial lump sum amount, the amount payable periodically, the frequency of payments and the beginning date, all as dictated by the *circumstances of this case* and the sound exercise of that discretion." *Deico*, 139 B.R. at 947 (emphasis in original).

When a secured creditor can or could exercise its statutory or contractual remedies to realize upon collateral is an inherently factual determination, but the fact that such a determination can be complicated does not make it unworkable. The discretionary standard adopted by *Deico* gives bankruptcy courts the needed flexibility to make appropriate adequate protection determinations as provided for in the Bankruptcy Code, based upon the evidence presented by the parties.

## CONCLUSION

The Bankruptcy Code, as interpreted by this Panel in *Deico*, grants a bankruptcy court broad discretion in deciding if adequate protection payments are required, and if so, the amounts and timing of such payments. We ultimately conclude that our prior Panel's discussion of standards for determining if adequate protection should be ordered in *Deico* is not so flawed as to require express modification. The bankruptcy court did not abuse its discretion in this case, because its analysis was consistent with the Code and *Deico*, and its findings and conclusions were not illogical, implausible, or without support in inferences that may be drawn from the facts in the record. Therefore, we AFFIRM.

PAPPAS, BAP Chief Judge, with whom JURY, Bankruptcy Judge, joins, concurring:

We agree with our colleagues that the decision of the bankruptcy court denying

secured creditor PCLC "retroactive" adequate protection payments should be affirmed. However, we should not sustain this result merely because it was an appropriate exercise of judicial discretion by the bankruptcy court as this Panel authorized in *In re Deico*. Instead, we should affirm because the bankruptcy court's holding is compelled by both the terms of the Bankruptcy Code and important pragmatic considerations. In doing so, we would align this Panel with the clear trend in the case law and establish a bright-line rule that adequate protection is not available to a secured creditor for any decline in the value of collateral occurring during a bankruptcy case prior to the filing of an appropriate request for such relief.

### I.

*Deico* instructs debtors, creditors and bankruptcy courts that adequate protection payments by a chapter 11 debtor to a secured creditor, intended by the Bankruptcy Code to compensate the creditor for only those losses occasioned by the bankruptcy, are required for only that period of time *after* the creditor would have exercised its state court remedies had there been no bankruptcy filing. However, in fashioning an adequate protection remedy, *Deico* grants the bankruptcy court broad discretion in fixing the beginning date, the amount, and the frequency of adequate protection payments. *In re Deico Elects.*, 139 B.R. at 947. While this pronouncement seems clear enough, to the extent it allows bankruptcy courts to award "retroactive" adequate protection to

secured creditors, it conflicts with the Bankruptcy Code. Moreover, in practice, application of the *Deico* rule is unworkable. Strong evidence of the practical difficulties of applying *Deico* is evident in this case, where *both* the debtor and secured creditor point to different parts of the *Deico* opinion to support their positions.

In particular, creditor PCLC cites to *Deico* for the proposition that "adequate protection analysis requires the bankruptcy court to first determine when the creditor would have obtained its state law remedies had bankruptcy not intervened." PCLC's Open. Br. at 13, quoting *In re Deico Elects.*, 139 B.R. at 947. From this premise, PCLC argues that, because it obtained its state law remedies (i.e., a state court writ of possession to recover its collateral) before the filing of the petition, the bankruptcy court should have awarded it adequate protection payments from and after the petition date.[15]

In contrast, debtor Big3D attempts to focus the Panel on a different snippet from *Deico*, where the Panel appears to condition its ruling: "Presumably, [the point when the creditor would have obtained its state law remedies absent bankruptcy] will be *after the creditor first seeks relief*." Big3D's Br. at 14, *citing In re Deico Elects.*, 139 B.R. at 947 (emphasis added). Relying upon this statement, Big3D insists that *Deico* supports its argument that adequate protection may only be awarded to a secured creditor from and after the time

---

**15.** Of course, the bankruptcy court declined PCLC's request for retroactive adequate protection in this case. As the majority notes, while several courts have read *Deico* to require adequate protection for a secured creditor after the point it would have obtained its state law remedies absent bankruptcy protection, significantly, none of those courts awarded adequate protection starting with

the petition date. *First Commonwealth Bank v. Onasni Prop. Group, LLC (In re Onasni Prop. Group, LLC)*, 425 B.R. 237, 242 (Bankr. W.D.Pa.2010); *In re Dulgerian*, 2008 WL 220523, at *5 (Bankr.E.D.Pa.2008); *In re Dupell*, 235 B.R. 783, 789 (Bankr.E.D.Pa.1999); and *In re Continental Airlines*, 146 B.R. 536, 539 (Bankr.D.Del.1992).

the motion for adequate protection is filed.[16]

Therefore, while both PCLC and Big3D agreed that the beginning point for an award of adequate protection is the point when the creditor would have obtained its state law remedies absent bankruptcy, they disagreed when that point occurred in this case. In attempting to resolve the disagreement, the bankruptcy court perceptively notes the fundamental flaw in *Deico's* approach to this issue: "*Deico* did not address what 'nonbankruptcy remedies' should control." Memorandum Decision at 7. And this deficiency in *Deico* is a problem for both parties. PCLC's argument fails since it is simply unclear in *Deico* which state law remedies control and whether those remedies need only to have been initiated by the creditor, or must have been completed, to justify an award of adequate protection. Big3D's argument is likewise infirm in that *Deico* gives no clear reason for the presumption that the starting point for determining adequate protection payments will be *after* the creditor files its motion for relief. Because our opinion was unclear, the bankruptcy court concluded that, under *Deico*, it should fix the terms of the adequate protection award, based on "the circum-

stances of the case and the sound exercise of that discretion." Memorandum Decision at 7, *citing In re Deico Electrs.*, 139 B.R. at 947. Exercising this discretion, the bankruptcy court decided, correctly in our view, that PCLC was not entitled to retroactive adequate protection.

We agree that the bankruptcy court did not abuse the discretion granted it by *Deico*. However, we would conclude that the purported "rule" announced in *Deico* regarding the point in time from which adequate protection may be calculated is so problematic in its application that it should be abandoned. This is because it is one thing to tell the bankruptcy court that it has discretion to make an adequate protection determination based upon the facts of each case. It is quite another, and unacceptable in our view, to provide no effective guidance to the parties or bankruptcy courts concerning how to select that date.

## II.

As the majority opinion thoughtfully explains, a review of the case law concerning the timing of adequate protection awards shows, over time, there has been a pronounced shift away from the rule an-

---

**16.** Big3D argues in the alternative that, even if *Deico* does not compel this holding, that based upon other case law, the Panel should adopt a bright-line rule prohibiting retroactive adequate protection. Big3D's Br. at 7–13. To consider this argument, and whether *Deico* should be modified, the Panel decided to hear and decide this appeal *en banc*. 9th Cir. BAP R. 8012–2(a),(d)(2) (providing that a majority of the members of the Panel may vote to hear an appeal en banc "when there is a challenge to an existing precedent of the Panel."). While we disagree with the majority's rejection of Big3D's arguments on the merits, we certainly agree with the Panel's decision to sit *en banc*. Unlike the other concurring opinion, we do not believe that *en banc* review is only proper when the Panel acts to correct an "unjust or untoward re-

sult." It is certainly proper for the Panel to hear and decide an appeal *en banc* even when, after doing so, it concludes prior precedent need not be modified. In other words, en *banc* review is appropriate to address the propriety of the rule of law applied by the bankruptcy court, not just the outcome of the case. This approach is consistent with the guidance provided by the Ninth Circuit to the Panel prior to its adoption of its *en banc* rule: "*[w]hen the panel believes that one of its precedents is wrongly decided or otherwise deserves reconsideration,* the goal of judicial efficiency may be best served by allowing the BAP itself to overrule its own precedent." *Saddleback Community Church v. El Toro Materials Company, Inc. (In re El Toro Materials Company, Inc.)*, 504 F.3d 978, 982 n. 7 (2007) (emphasis added).

nounced in the early cases that emphasized the date of filing the bankruptcy petition as the starting point for payments. Clearly, the bulk of the cases decided since about 1990 favor beginning adequate protection payments at the time relief is requested by the creditor.

One particularly cogent discussion of the adequate protection payment timing issue is found in *In re Best Prods. Co., Inc.*, 138 B.R. 155 (Bankr.S.D.N.Y.1992), *aff'd* 149 B.R. 346 (S.D.N.Y.1992). In adopting the modern rule, the bankruptcy court in *Best Prods.* first noted, as did the bankruptcy court in this appeal, that § 363(e) expressly provides that the bankruptcy court "shall prohibit or condition" the chapter 11 debtor's use of non-cash collateral without adequate protection only "on request of an entity that has an interest in the property. . . ." *Id.* at 156. This requirement—that a secured creditor must first ask for protection of its interest in non-cash collateral—is consistent with the provisions of § 363(c)(1), which permit a chapter 11 debtor to use property of the estate in the ordinary course of its business *without* providing adequate protection. The only exception to this rule is found in § 363(c)(2), which restricts a debtor's use of *cash* collateral without the secured creditor's consent or a court order. *Id.* Even then, under § 363(c)(2)(B), court permission to use a creditor's cash collateral will be granted "in accordance with the provisions of this section[,]" that is, if the secured creditor's interest is adequately protected. Simply put, the Bankruptcy Code makes clear that, except as to cash collateral, a chapter 11 debtor need not provide adequate protection payments to a secured creditor for the use of collateral until the secured creditor requests such relief.

In addition to discussing the Bankruptcy Code, the bankruptcy court in *Best Prods.* also pointed out the hardship which may result to a debtor if a secured creditor waits until the eve of confirmation of the debtor's proposed reorganization plan to file a request for retroactive adequate protection payments. According to the court, this tactic would subject the debtor to "sizeable 'makeup' payments." *Id., quoting Ahlers,* 794 F.2d at 396 n. 6 and *citing Grundy Nat'l Bank,* 754 F.2d at 1441. Indeed, it is likely that few reorganizing chapter 11 debtors have the ability to "make up" substantial amounts of adequate protection payments.[17]

Finally, the bankruptcy court concluded that the filing of a stay relief or adequate protection motion by a creditor gives the debtor unmistakable notice that it "must decide what it should do with the collateral. The debtor is given the option to surrender the property to the entity that has made the request, and avoid providing adequate protection, or provide adequate protection to such entity for the debtor's continued use of the collateral." *Id.* at 158. As a practical matter, then, a chapter 11 debtor should be able to assume that, absent a request by the secured creditor, it may use collateral without payments to the creditor pending confirmation of a plan.

While acknowledging a division in the case law about the starting date for adequate protection payments, the leading bankruptcy law treatise also endorses the position taken by the more recent decisions. *See* 3 *Collier on Bankruptcy* ¶ 361.02[3], 361–7 (Alan N. Resnick & Henry J. Sommer, eds., 16th ed., 2010)(stating that "[t]he text of the Bankruptcy Code seems to support the view

---

**17.** Even the Panel in *Deico* recognized that a bankruptcy court's order that a debtor pay a "lump sum of past due adequate protection could suffocate a debtor otherwise able to reorganize." 139 B.R. at 947.

that protection is provided only from the date of the request. . . ." and that "[i]t would seem contrary to the policy of providing a breathing spell for the debtor and an opportunity to reorganize if the [bankruptcy] court were to require protection against the . . . value decline that had already occurred as a condition to further continuation of the automatic stay or further continued use by the estate of the collateral. . . .").

In addition, the only other BAP to consider the issue has opted for a bright-line rule. It noted:

> "The Bankruptcy Code nowhere puts the responsibility on the debtor to initiate a consideration of adequate protection of a creditor's noncash collateral." *In re Robinson,* 225 B.R. 228, 233 (Bankr.N.D.Okla.1998) (quoting *First State Bank v. Advisory Info. & Management Sys., Inc. (In re Advisory Info. & Management Sys., Inc.),* 50 B.R. 627, 630 (Bankr.M.D.Tenn.1985)). Entitlement to adequate protection in the first instance with respect to all property of the estate other than cash collateral is triggered by a creditor's request to the bankruptcy court and "if you don't ask for it, you won't get it." *Id.* (quoting *In re Kain,* 86 B.R. 506, 512 (Bankr. W.D.Mich.1988)).

*TranSouth Financial Corp. v. Sharon (In re Sharon),* 234 B.R. 676, 684 (6th Cir. BAP 1999).

As can be seen, courts and commentators alike favor using the date of filing of the creditor's motion as the starting date for adequate protection payments.

### III.

The Panel's precedent is flawed. We should modify the rule announced in *In re Deico* by holding that adequate protection payments are available to a secured creditor only from and after the date of filing of its motion. The provisions of § 363 of the Bankruptcy Code contemplate the application of this bright-line rule by specifying that adequate protection payments may not be ordered by the bankruptcy court until a secured creditor files a "request." Moreover, the case law since *Deico* supports a bright-line rule. As is seen in this case, the *Deico* opinion is subject to varying interpretations and is frequently unworkable in practice. In contrast, a bright-line rule will be easily applied by debtors, creditors and bankruptcy courts. While a bankruptcy court has discretion to fashion the other features of an adequate protection award based upon the facts of each case, a clear rule prohibiting adequate protection payments before a motion is filed will encourage secured creditors that contend collateral is declining in value to bring the issue promptly to the bankruptcy court. If the creditor's proof shows it is correct, adequate protection payments can be ordered "going forward," thereby avoiding the potential prejudice to a reorganizing debtor occasioned by large, retroactive, "makeup" awards.

Through this appeal, the Panel enjoys a rare opportunity to correct one of its precedents. While caution is in order when considering a change to established precedent, as the Supreme Court has instructed, this Panel may properly revisit earlier holdings for "prudential and pragmatic considerations. . . ." *Planned Parenthood v. Casey,* 505 U.S. 833, 854, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992). Both the Bankruptcy Code and pragmatic reasons require that we do so in this case.

MARKELL, Bankruptcy Judge, with whom HOLLOWELL, Bankruptcy Judge joins, concurring in the result:

I concur in the result. I dissent, however, from the decision to hear this matter en banc.

This appeal is simple. Under *Paccom Leasing Corp. v. Deico Elects., Inc. (In re Deico Elects., Inc.)*, 139 B.R. 945 (9th Cir. BAP 1992), the bankruptcy court had discretion as to when adequate protection payments were to begin. The bankruptcy court fairly exercised that discretion, and required adequate protection payments to begin after the date they were first requested. Although appellant asked, the bankruptcy court did not retroactively order any payments.

This set of facts call for us to affirm, as acknowledged by the lead opinion. I therefore concur with the majority in affirming the bankruptcy court's decision.

I write more because the separate concurrence indicates that, notwithstanding its view that we should affirm the result, it wishes to "abandon" *Deico*. Given this position, I feel compelled to comment on the minimum conditions under which we should exercise our en banc power.

I start with the separate concurrence's treatment of *Deico*. It is concerned that *Deico* could be, and has been, argued both for and against retroactive adequate protection, thus injecting inappropriate and costly uncertainty in the bankruptcy process. I find this concern odd given its stance that we should affirm. The bankruptcy court's decision was not in the zone of discretion that the separate concurrence would condemn; the bankruptcy court did not order retroactive adequate protection. Indeed, neither the lead opinion nor the separate concurrence cites any reported case in which *Deico* has been used to justify such retroactive adequate protection. Notwithstanding this, the separate concurrence would have this en banc panel "abandon" a decision that has never been used to justify the type of result it would reverse.

Given this oddity, it makes no sense to me to sit en banc simply to rewrite a prior decision without facts or an order exemplifying the evil to be eradicated. *See, e.g., Western Pac. R.R. Corp. v. Western Pac. R.R.*, 345 U.S. 247, 270, 73 S.Ct. 656, 97 L.Ed. 986 (1953) ("Hence, insofar as possible, determinations *en banc* are indicated whenever it seems likely that a majority of all the active judges *would reach a different result* than the panel assigned to hear a case or which has heard it.") (Frankfurter, J., concurring) (emphasis supplied); *Public Serv. Co. of New Mexico v. F.E.R.C.*, 863 F.2d 1021, 1023 (D.C.Cir. 1988) ("I do not think that this case is an appropriate one for the court to rehear en banc ... Thus, even were the court to rehear the case and to accept all of FERC's arguments, the end result would remain unchanged. I do not conceive it to be a proper use of the court's resources to convene en banc in such circumstances.") (D.H. Ginsburg, J., concurring).

I am concerned that as a Panel we venture outside the proper realm of judicial review by indicating a willingness to rewrite our precedent without an unjust or untoward result to guide our drafting. Such an effort is the antithesis of the common law method. *See* Robert A. Sprecher, *The Development of the Doctrine of Stare Decisis and the Extent to Which It Should Be Applied*, 31 A.B.A.J. 501, 501–02 (1945). Without a change in result, our words, I fear, are little more than nice sounding dicta, and we unwittingly engage in treatise writing, not opinion drafting.

The separate concurrence justifies this exercise by describing *Deico* as "flawed," and by then invoking the Ninth Circuit's indication to this Panel that we should revisit a decision that "deserves reconsideration." Separate Concurrence, at n.16 (citing *Saddleback Community Church v. El Toro Materials Company, Inc. (In re El Toro Materials Company, Inc.)*, 504

F.3d 978, 981 n. 7 (2007)). Toward the end of this concurrence, it also invokes, as does the lead opinion, the Supreme Court's decision in *Planned Parenthood v. Casey*, 505 U.S. 833, 854, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992), which states that courts may properly revisit earlier holdings for "prudential and pragmatic considerations...."

But both of these precedents seem inapt. *El Toro* was issued before we drafted our own en banc rule, which the Ninth Circuit approved, and which would presumably control here. *Casey* was drafted from the perspective of a court from which there is no appeal.[18]

Our position is quite different. Acknowledging that our decisions may be appealed as of right to the Ninth Circuit, and that any en banc hearing delays the ultimate resolution of the case, our en banc rule states a limited role for en banc hearings. Rule 8012–2(a) states that:

> An en banc hearing or decision of an appeal is not favored and ordinarily will not be ordered unless it appears that it is necessary to secure or maintain uniformity of the Panel's decisions including, without limitation, when there is a

challenge to an existing precedent of the Panel.

Hearing this case en banc is not necessary "to secure or maintain uniformity;" no contrary case has been identified. Nor has there been any substantial challenge to this Panel's precedent in the eighteen years since we decided *Deico*. The separate concurrence labels *Deico* "so problematic in its application that it should be abandoned." But it offers no convincing argument as to why its application requires us to rewrite it without first being presented with facts that require reversal.[19]

Justice Stevens once paraphrased the Latin maxim at issue here today—*stare decisis et non quieta movere*—as a "doctrine that teaches judges that it is often wise to let sleeping dogs lie." John Paul Stevens, *The Life Span of a Judge–Made Rule*, 58 N.Y.U. L.Rev. 1, 1 (1983). We should not disturb *Deico's* somnolent status. I would simply affirm, and I concur to that extent.

---

18. Indeed, *Casey* itself listed the circumstances under which the Court might reconsider a prior ruling. Under *Casey*,

> "when this Court reexamines a prior holding, its judgment is customarily informed by a series of prudential and pragmatic considerations designed to test the consistency of overruling a prior decision with the ideal of the rule of law, and to gauge the respective costs of reaffirming and overruling a prior case. Thus, for example, we may ask whether the rule has proven to be intolerable simply in defying practical workability,....; whether the rule is subject to a kind of reliance that would lend a special hardship to the consequences of overruling and add inequity to the cost of repudiation; .... whether related principles of law have so far developed as to have

left the old rule no more than a remnant of abandoned doctrine,....; or whether facts have so changed, or come to be seen so differently, as to have robbed the old rule of significant application or justification...." *Casey*, 505 U.S. at 854–55, 112 S.Ct. 2791. Today's opinions do not undertake this analysis to any substantial degree.

19. Selecting this case for en banc review raises a more fundamental issue. If we signal a willingness to review an imperfect precedent to the extent it is problematic, our precedents, whatever they may be, becomes less certain and no better than semi-absolute. And as it has been stated, a "semi-absolute precedent has no more virtue than a semi-fresh egg." Alfred L. Goodhart, *Precedents in the Court of Appeal*, 9 Cambridge L.J. 349, 357 (1947).